UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FLETA CHRISTINA COUSIN SABRA<br>455 Swiftside Drive, Suite 102<br>Cary, NC 27518<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. CUSTOMS AND BORDER<br>PROTECTION,<br>1300 Pennsylvania Avenue NW,<br>Washington, D.C. 20229<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 1:20-cv-681 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552, agency records Defendant U.S. Customs and Border Protection ("CBP") has unlawfully withheld since May 2017 relating to the experiences of a U.S. citizen, a U.S. lawful permanent resident ("LPR"), and a family of Syrian refugees at the U.S.-Mexico border in late 2015.

2. On or around September 11, 2015, Plaintiff Fleta Christina Cousin Sabra ("Ms. Sabra" or "Plaintiff")—a U.S. Citizen and accredited humanitarian worker—traveled with a family of asylum-seeking Syrian refugees and the refugees' LPR relative from Mexico into the United States by way of a U.S. port of entry in Southern California.

3. During this encounter, CPB officials unlawfully detained Ms. Sabra for several hours, insulted her Muslim faith, pulled off her hijab, and physically assaulted her.

1

4. Ms. Sabra suffered severe physical injuries as a result. She subsequently filed written complaints with CBP and the Department of Homeland Security ("DHS") regarding the egregious abuses she suffered at the border.

5. In July 2016, Ms. Sabra submitted a request for agency records, including video, regarding the September 11, 2015 encounter, CBP's subsequent related records, CBP's investigation, communications regarding the family of Syrian refugees, and other CBP records regarding Ms. Sabra.

6. On August 5, 2016, CBP provided a mere two-page Form I-213, Record of Deportable/Inadmissible Alien, in response to Plaintiff's FOIA request regarding the arrest, detention, and alleged physical abuse of a U.S. Citizen.

7. CBP's response indicated that this record was created on August 1, 2016 at 1245.

8. When Ms. Sabra timely appealed this response, CBP's FOIA office partially reversed its decision and provided her with an additional three pages of printed documents.

9. On May 5, 2017, Ms. Sabra submitted a second request for CBP records, including video pertaining to her mistreatment and CBP's investigation of it. Her May 2017 request included a request for expedited processing.

10. In the 33 months that have elapsed since receiving Ms. Sabra's 2017 request, CBP has yet to provide a response, or to adjudicate her request for expedited processing.

11. Because CBP has failed to adequately search for and properly disclose the agency records responsive to her FOIA, Ms. Sabra seeks declaratory and injunctive relief under the Act.

//

//

### Jurisdiction and Venue

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. Venue is proper under 5 U.S.C. § 552(a)(4)(B) because Ms. Sabra brings this action in the District of Columbia.

### Parties

13. Ms. Sabra is a United States Citizen and has been since her birth. She resides in Cary, North Carolina.

14. CBP is an executive agency of the United States government and is responsible for safeguarding America's borders. CBP is an 'agency' within the meaning of 5 U.S.C. § 552(f)(1). CBP is an agency component within the Department of Homeland Security ("DHS").

15. CBP has custody of, possession of, and control over, the records sought by Ms. Sabra under the Act, and CBP had such custody, possession, and control at the time the records were requested.

### Factual Background

16. On or around September 11, 2015, Ms. Sabra arrived at the U.S. port of entry traveling in a vehicle with a U.S. LPR and 5 members of that resident's family (3 adults and 2 children) who were refugees from Syria intending to seek asylum in America (collectively, "group").

17. Ms. Sabra is a non-attorney legal worker who was and remains an Accredited Representative of the Board of Immigration Appeals and Executive Office for Immigration Review.

18. Ms. Sabra explained to a CBP employee that they wished to file for asylum based on fear of persecution.

19. A CBP employee instructed the group to park in a particular location, and the group did so.

20. The group provided their identification documents to CBP employees, explained that the driver was a lawful permanent resident, and that Ms. Sabra was a U.S. citizen.

21. Asylum applications for the Syrian refugee family were provided to a CBP employee.

22. Ms. Sabra provided her U.S. Passport, Passport card, and Global Entry card to a CBP employee.

23. Since approximately 2013, Ms. Sabra was a participant in the CBP's Global Entry Program[1] ("Global Entry"), which had required a rigorous background check and in-person interview.

24. Her approval for Global Entry grants her expedited clearance when returning to the U.S. from international travel.

25. Ms. Sabra was a participant in Global Entry when she arrived at the U.S. Port of Entry on or about September 11, 2015.

26. Notwithstanding Ms. Sabra's proof of U.S. citizenship and her lawful attempt to assist bona fide asylum-seekers present their claims at a port-of-entry, CBP employee Michel handcuffed Ms. Sabra's hands behind her back with metal handcuffs.

27. All other members of the group were also handcuffed by CBP employees.

28. The members of the group (including Ms. Sabra) were frisked or hand-patted by

---

[1] *See* U.S. Customs and Border Protection, *Global Entry*, https://www.cbp.gov/travel/trusted-traveler-programs/global-entry (last visited Feb. 18, 2017).

4

CBP employees. No weapons or weapon-like items were observed on any member of the group.

29. Ms. Sabra asked CBP Employee Michel if she had broken any laws, and CBP Employee Michel said no. Ms. Sabra asked why she was in custody, and CBP Employee Michel answered, "because I can."

30. Ms. Sabra advised that she was a U.S. citizen, and that Ms. Sabra believed that CBP Employee Michel was violating her constitutional rights. CBP employee Michel responded to the effect that the constitution does not exist there, and Ms. Sabra had no rights.  Ms. Sabra insisted that they were in America, and CBP employee Michel told Ms. Sabra to shut up.

31. CBP employees escorted the group of handcuffed individuals into a CBP building at or near the port of entry, on the U.S. side of the U.S.-Mexico border.

32. CBP employee Michel pushed and/or pulled the handcuffed Ms. Sabra, hurrying her as she attempted to walk.

33. Ms. Sabra explained that she had recently had surgery on her foot, and she was still healing. Ms. Sabra indicated it was her right foot which was injured. CBP employee Michel asked Ms. Sabra if she had medication for it, and Ms. Sabra said she did, and it was in her purse.

34. CBP employee Michel then used her own foot (wearing a boot) to kick into Ms. Sabra's injured right foot, causing significant pain to Ms. Sabra, just before entering the CBP building.

35. Ms. Sabra asked CBP employee Michel if Ms. Sabra was under arrest, and Michel advised that Ms. Sabra was not under arrest.

36. Ms. Sabra said she felt as though she were under arrest, and she saw other U.S.

Citizens who were not being so detained.

37. Ms. Sabra asked CBP employee Michel if her handcuffs could be loosened, but instead CBP employee Michel tightened the handcuffs on 58-year-old Ms. Sabra.

38. Once inside the CBP building, Ms. Sabra removed her shoe from her injured foot, and CBP employee Michel laughed at Ms. Sabra.

39. CBP employee Michel told Ms. Sabra that Ms. Sabra would be the last to be processed. Ms. Sabra asked why she was being processed, but did not receive an explanation.

40. Ms. Sabra asked if Ms. Sabra was under arrest, and CBP employee Michel told Ms. Sabra that Michel was not talking to her.

41. CBP employee Michel denied Ms. Sabra's requests for water, for use of the toilet, for Ms. Sabra's pain-relieving medication for her foot, and to make a phone call.

42. Ms. Sabra spent what she perceived to be multiple hours handcuffed in the CBP building, and without water, pain-relieving medication, use of the telephone, and use of toilet facilities.

43. CBP employee Michel ordered Ms. Sabra to stand. Ms. Sabra asked repeatedly if she could sit down, due to pain from her foot, but CBP employee Michel told Ms. Sabra no, and to shut up.

44. CBP employee Michel said "fuck you" to Ms. Sabra, and CBP employee Michel called Ms. Sabra "sand ni**er."

45. CBP employee Michel snatched off Ms. Sabra's hijab, so that Ms. Sabra's head was uncovered and visible.

46. CBP employee Michel asked Ms. Sabra if Ms. Sabra's hair was a "weave."

47. Two other female CBP employees, Ramirez (first name unknown, last name

6

spelled on information and belief) and an African-American female (name unknown, hereafter "Unnamed Female") also participated in searching Ms. Sabra.

48. Once CBP employee Michel snatched off Ms. Sabra's hijab, all three CBP employees—Michel, Ramirez, and Unnamed Female—searched through Ms. Sabra's hair, handling it roughly and yanking it.

49. CBP employee(s) ordered Ms. Sabra to remove all of her clothes, including her bra, leaving only her bottom underwear. Ms. Sabra obeyed the order, and removed all her clothing, standing before CBP employees entirely naked, except for the underwear on her lower half.

50. CBP employee(s) ordered Ms. Sabra to put her hands on the wall, and spread her legs. Ms. Sabra obeyed the order, and put her hands on the wall, with her legs spread.

51. A CBP employee (either Michel or Ramirez) kicked both of Ms. Sabra's feet.

52. CBP employees Michel and Ramirez were pushing and shoving Ms. Sabra.

53. CBP employees Michel and Ramirez conducted an invasive hand search of Ms. Sabra, while Ms. Sabra was naked, placing their hands on her naked body.

54. A CBP employee (either Michel or Ramirez) hit Ms. Sabra's head into the wall, causing pain to Ms. Sabra.

55. CBP employee Michel advised that Michel's shift was ending. CBP employee Michel asked Ms. Sabra if Ms. Sabra had learned a lesson.

56. After Ms. Sabra redressed herself, CBP employee Ramirez took Ms. Sabra elsewhere in the CBP building.

57. Ms. Sabra asked CBP employee Ramirez about seizing people without legally sufficient grounds, and CBP employee Ramirez asked why Ms. Sabra didn't just shut up.

58. CBP employee Ramirez hit Ms. Sabra in the head with CBP employee Ramirez's

own fist, causing severe pain to Ms. Sabra.

59. CBP employee Ramirez insisted that Ms. Sabra be fingerprinted and photographed. Ms. Sabra advised that she did not want to be photographed or fingerprinted. CBP employee Ramirez fingerprinted and photographed Ms. Sabra. CBP employee Ramirez instructed Ms. Sabra to stand.

60. Male CBP employee Hernandez (first name unknown, last name on information and belief), who appeared to be a supervisor, instructed that Ms. Sabra be allowed to sit down and be given her medication.

61. Ms. Sabra's medication was returned to her partially destroyed.

62. Asylum applications for the Syrian refugee family were given to a CBP employee, who appeared to discard them.

63. At approximately 5:00 a.m. on September 12, 2015, CBP employees permitted Ms. Sabra to leave the CBP building, and continue in to the United States. CBP did not return Ms. Sabra's passport to her at that time.

64. Ms. Sabra required extensive medical treatment for the injuries she suffered in CBP custody, including surgery.

65. She continues to suffer and receive mental health treatment for the severe anxiety and the lingering psychological effects of the injuries and humiliation she endured while in CBP custody

66. Ms. Sabra sought extensive medical treatment following her detention for a concussion and injuries to her eyes, hands, and feet.

67. In the early morning hours of September 12, 2015, CBP employees permitted Ms. Sabra to leave the CBP building, and continue traveling into the United States.

68. CBP did not return Ms. Sabra's passport to her at that time.

69. Ms. Sabra filed complaints with CBP and the Department of Homeland Security's Office for Civil Rights and Civil Liberties.

70. She was interviewed by two CBP investigators in her home state of North Carolina several months after she filed these complaints.

71. The CBP investigators indicated to Ms. Sabra that a video of the incident existed, but refused to show it to her or her counsel.

72. Ms. Sabra has received no meaningful information regarding what became of the investigation into her allegations.

73. Statistically, her complaint has a 95.9% of going unaddressed by CBP's internal investigators.[2]

## Plaintiff's May 2017 FOIA Request and CBP's Response

74. Plaintiff submitted a Freedom of Information Act/Privacy Act request to Defendant through CBP's online FOIA portal on May 5, 2017.

75. Her request described the records as follows:

> All agency records, including, but not limited to, video, database entries, photographs, communications (including emails, letters, faxes, phone logs, and text messages), memoranda, investigative reports, and other things relating to the encounter between requestor and U.S. Customs and Border Protection officials on or about September 11, 2015 - September 12, 2015 at the Otay Mesa OR San Isidro ports-of-entry. Please search specifically for use of force reports,

---

[2] *See* Guillermo Cantor & Walter Ewing, *Still No Action Taken: Complaints Against Border Patrol Agents Continue to Go Unpunished*, American Immigration Council (Aug. 2017) *available at* https://www.americanimmigrationcouncil.org/sites/default/files/research/still_no_action_taken_complaints_against_border_patrol_agents_continue_to_go_unanswered.pdf. *See also* Daniel E. Martinéz, Guillermo Cantor & Walter Ewing, *No Action Taken: Lack of CBP Accountability in Responding to Complaints of Abuse*, American Immigration Council (May 4, 2014) *available at* https://www.americanimmigrationcouncil.org/sites/default/files/research/No%20Action%20Taken_Final.pdf

internal affairs complaints and responses, internal investigations, professional responsibility investigations and interviews, video and photographic evidence gathered in response to her complaints, and all other records in the possession, custody, or control of CBP. To assist in the agency's search, I am providing as attachment the agency's response to her request, which indicated she was seeking records regarding her encounter at San Isidro, but which produced records regarding an encounter at the Otay Mesa POE. She filed a complaint with DHS CRCL on September 23, 2015, and was interviewed by officials she believes worked for CBP regarding that complaint on or about December 21, 2015 in North Carolina.

76. On May 9, 2017, CBP assigned the request tracking number CBP-OFO-2017-055103 and placed it in the Simple Track for processing.

77. As of the date of this filing, CBP has neither responded to Plaintiff's request nor adjudicated her request for expedited processing.

78. The current FOIA Online status portal shows her request phase as "processing" and her final disposition as "undetermined." The same system showed an anticipated production date of June 7, 2017.

## Claims for Relief

**Count I: Violation of the FOIA: Improper Withholding of Agency Records**

79. All previous paragraphs are incorporated as though fully set forth herein.

80. Plaintiff has a legal right under the FOIA to obtain agency records described in the May 2017 request.

81. No legal basis exists for CBP's failure to adequately search for and promptly disclose responsive agency records in accordance with the timing and other requirements of the Act.

10

82. CBP's failure to make reasonable efforts to search for responsive agency records, and its wrongful withholding of agency records sought in connection with the May 2017 request, violates the FOIA.

83. Defendant's wrongful withholding of the agency records sought in connection with Plaintiff's request violates the FOIA.

84. Plaintiff has constructively exhausted all of her administrative remedies.

**Count II:   Violation of the FOIA: Pattern and Practice of Failing to Timely Adjudicate Expedited Processing Requests**

85. All previous paragraphs are incorporated as though fully set forth herein.

86. Since receiving Plaintiff's request for expedited processing in May 2017, CBP has failed to adjudicate it, in violation of the FOIA.

87. CBP's failure to properly and lawfully handle Plaintiff's request for expedited processing is part of a pattern and practice by CBP's FOIA office of failing to timely adjudicate and fulfill expedited processing requests in accordance with the law.

88. Plaintiff has personal and ongoing interest, and a legal right under the FOIA, in being able to make FOIA requests through the expedited processing provisions of the Act.

89. CBP's chronic failure to timely respond to expedited processing requests like those from requestors violates the letter and purpose of the Act by depriving FOIA requestors of timely information allowing them to determine what their government is up to in real time.

90. Plaintiff has constructively exhausted her administrative remedies with respect to expedited processing.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that judgment enter in her favor and against Defendant, and that the Court:

A. Order Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them, to conduct a reasonable search for records responsive to Plaintiff's request under the FOIA;

B. Preliminarily and permanently enjoin and restrain Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them from withholding the agency records at issue in this case;

C. Order Defendant to produce to Plaintiff all agency records which are responsive to Plaintiff's request and not exempt pursuant to FOIA no later than thirty dates after answering Plaintiff's Complaint;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and,

E. Award all other relief to Plaintiff that the Court deems just, equitable, and proper.

Dated: March 9, 2020                                Respectfully submitted,

/s/ R. Andrew Free
**R. ANDREW FREE, No. 30513**
P.O. Box 90568
Nashville, TN 37209
Tel. 844-321-3221
Fax: 615-829-8959
Andrew@immigrantcivilrights.com
*Counsel for the Plaintiff*