**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FLETA CHRISTINA COUSIN SABRA | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:20-cv-681-CKK |
| | ) | |
| U.S. CUSTOMS AND BORDER | ) | June 1, 2020 |
| PROTECTION, | ) | Plaintiff's Status Report |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S STATUS REPORT #1 – JUNE 1, 2020**

On April 16, 2020, this Court ordered the parties to submit a following Joint Status Report. Dkt. No. 6. On June 1, 2020, Defendant informed Plaintiffs' counsel that it is refusing this Court's Order, and will not even set forth its positions separate in this Status Report. Accordingly, Plaintiff respectfully submits this first Status Report.

## I.    Plaintiffs' Failed Attempts to Meet and Confer

On May 23, 2020, counsel for the Plaintiff transmitted an initial draft of the joint status report to counsel for the Defendant, and asked for Defendant's positions by no later than Wednesday, May 27, 2020. On Friday May 29, 2020, at 9:09 p.m., after providing no response to the issues identified in Plaintiff's draft or any other conferral on those issues, counsel for Defendant provided a separate draft report that failed to address almost any of the issues raised by Plaintiff. On Saturday, May 30, 2020, at 4:56 p.m., counsel for the Plaintiff emailed counsel for the Defendant a second draft of the joint status report which inserted, verbatim, all of the positions articulated by Defendant in the May 29 draft, and sets forth separately Plaintiff's positions. Plaintiff requested Defendant's approval or edits by 1:00 p.m. on June 1, 2020. On June 1, 2020 at 12:48

1

p.m., counsel for the Defendant emailed counsel for the Plaintiff notifying her that CBP will not agree to a draft that contains her full position statements.

## I.     The Positions CBP Communicated to Plaintiff

### A.  Status of the FOIA Request

The agency has advised that it completed its search for records potentially responsive to plaintiff's FOIA request and that it is currently processing those records. The agency further advised that it made an initial production of non-exempt, responsive records on May 29, 2020, and that the records that remain to be processed consist of (i) 172 potentially responsive emails and their attachments, which total 13,794 pages, and (ii) (i) three audio files, and (ii) multiple video files, with associated audio, comprising several hours of responsive footage.  In addition, the agency has advised that it currently anticipates completing its processing of the audio files before the end of July. The agency has further advised that it is impossible to provide a useful estimate of when it can complete its processing of the video files with associated audio and that it does not anticipate completing that processing within the next three months.

For the emails and their attachments, the agency has advised that it anticipates processing 500 pages per month until it completes its production.

For the three audio and video files, the agency has advised that the DVDs containing those were originally inaccessible due to applicable stay-at-home orders and agency telework directions in southern California.  The agency has further advised that once recovered, those files were in a format that was inaccessible to its counsel and FOIA processors.  The agency has advised that redacting low-resolution video is a very time-consuming process and that there are several hours of video to process.  The agency has advised that it is impossible to provide a useful estimate of when it can

complete its processing of the video and audio files and that it does not anticipate completing that processing within the next three months. The agency further advised, "Plaintiff can choose to file whatever motion(s) she choose to file but that will not speed up the agency's processing or the government's view that Plaintiff's complaint includes allegations that are irrelevant to her FOIA request."

### B. *Open America* Motion

The agency has advised that it is considering whether to file a motion for an *Open America* stay.

### C. *Vaughn* Index

CBP opposes Plaintiff's request for a rolling *Vaughn* index.

## II.    Plaintiff's Position

Plaintiff is concerned with CBP's ongoing failure to engage in meaningful conferral. Several issues in this matter—including potential narrowing of the request, search custodians and parameters, and phasing of releases—would benefit from proactive, early resolution.

Because Plaintiff's counsel is aware that this Court generally manages FOIA actions through Joint Status Reports—rather than in-person or telephonic status conferences—Plaintiffs' portion of this report endeavors to identify unresolved issues that may require judicial intervention in the near future and relates the parties' efforts to resolve them thus far. Where Plaintiff requests specific aid of the Court in its forthcoming order, such request is denoted by underscored text. Plaintiff's Proposed Order is attached hereto.

### A. Plaintiff's FOIA Request

This action involves a FOIA request that languished before the CBP for over three years before Plaintiff sought an order from this Court. Dkt. No. 7-1 at 1. (Mem. Supp. Pl.'s Mot. for Jmt. on the Pleadings). Plaintiff is a Muslim Woman of Color and U.S. citizen who has been qualified as an Accredited Representative to provide certain immigration legal services by the Department of Justice, Dkt. No. 1, ¶¶ 2, 17, and who at all relevant periods held Trusted Traveler (Global Entry) status with CBP. *Id.* ¶¶ 23-25. Her request and the facts underlying it involve the government's alleged violations of her First Amendment right to record CBP officials in publicly accessible areas of ports-of-entry, *see generally Askins v. Dep't of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018), and her alleged physical and verbal abuse by CBP officers during an encounter at CBP's Otay Mesa Port-of-Entry as she accompanied several Syrian asylum-seekers for processing in the early hours of September 11, 2015.

Specifically, on May 5, 2017, Plaintiff properly directed, and CBP received and acknowledged its receipt of, a FOIA/Privacy Act request for:

> All agency records, including, but not limited to, video, database entries, photographs, communications (including emails, letters, faxes, phone logs, and text messages), memoranda, investigative reports, and other things relating to the encounter between requestor and U.S. Customs and Border Protection officials on or about September 11, 2015 - September 12, 2015 at the Otay Mesa OR San Isidro ports-of-entry. Please search specifically for use of force reports internal affairs complaints and responses, internal investigations, professional responsibility investigations and interviews, video and photographic evidence gathered in response to her complaints, and all other records in the possession, custody, or control of CBP. To assist in the agency's search, I am providing as attachment the agency's response to her request, which indicated she was seeking records regarding her encounter at San Isidro, but which produced records regarding an encounter at the Otay Mesa POE. She filed a complaint with DHS CRCL on September 23, 2015, and was interviewed by officials she believes worked for CBP regarding that complaint on or about December 21, 2015 in North Carolina.

## B. The Status of Plaintiff's FOIA Request

Plaintiff addresses the status of (i) her request for expedited processing, (ii) the agency's search, and (iii) the agency's productions.

i. *The Expedited Processing Request*

At 10:21 p.m. on May 25, 2020, Plaintiff received e-mail notification that CBP denied her expedited processing request. The notification reads "Request Created on: 07/08/2018." The "Expedited Processing Disposition Reason" reads "Does not meet requirements per DHS Regulations." Those regulations also require the agency to make a decision on expedited processing requests within ten days of receiving them. 6 C.F.R. § 5.5(e)(4).

On May 26, 2020, Plaintiff's counsel emailed counsel for CBP to confirm that this notification represented the agency's position, so that the parties could update the Court as to the currently pending Motion for Judgment on the pleadings. Counsel for Defendant offered no response.

Plaintiff's position with respect to the expedited processing aspect of her currently pending Motion for Judgment on the Pleadings is that she is entitled to judgment as a matter of law that CBP violated the FOIA's 10-day decision requirement for expedited processing cases. CBP's subsequent actions do not moot this motion, or deny her of standing for declaratory relief.

Plaintiff would prefer to confer with agency counsel and encourage a revisiting of CBP's position. Such conferrals could include an agreed production schedule in lieu of Plaintiff having to litigated her entitlement to expedited processing on summary judgment. CBP has not yet conferred as requested by Plaintiffs' counsel on May 26. Plaintiff contemplates seeking summary judgment as to her entitlement to expedited processing if the parties are unable to resolve this issue within the next thirty days.

ii. *The Agency's Search*

Plaintiff has significant concerns as to the adequacy of the agency's search. She believes conferring with CBP to understand whether the agency's completed search was adequate should happen *before* the parties propose a schedule of rolling productions for nearly 14,000 pages of records. To that end, after being informed by Defendant on April 28, 2020 that the agency had completed its search, Plaintiff posed the following questions on April 29, 2020:

A. Questions Regarding Search Adequacy
So as to not hide the ball here, we anticipate responsive documents were created within CBP's San Diego Field Office, CBP OPR, CBP OPLA, and CBP HQ, at minimum. We will accept a copy of the CBP FOIA office's tasking email/transmission to the appropriate offices, and the report-back forms for each, in lieu of responses to the questions above.

Search Tasking Info
1. Can you please ask CBP FOIA agency counsel to identify:
    a. The date on which CBP FOIA tasked its initial search;
    b. Which agency offices CBP FOIA tasked with searching;
    c. What terms (if any) CBP FOIA or CBP offices used to complete the search;
    d. Which systems of records or databased CBP searched;
    e. Whether, based on the initial return of documents, CBP FOIA anticipates tasking any additional offices; and
    f. Whether, based on the initial return of documents, CBP FOIA anticipates any intra- or inter-agency referrals to other DHS agency components or executive branch agencies.

2. Can you please provide:
    a. A copy of the CBP FOIA search taskings (Note: Plaintiffs [sic] would accept these documents in lieu of the information listed in Item 1(a)-(d) above); and
    b. A copy of the CBP component tasking returns (Not: Plaintiffs [sic] would accept these documents in lieu of the information listed in Items 1(a)-(d) above).

Search Results

3. Can you please ask CBP FOIA to state the format of each record CBP FOIA located (*e.g.*, PDF, ODT, ODS, AVI, MP4, JPG, MP3, MOV, WEBM)[?].

4. Can you please ask CBP FOIA to provide:
   a. The <u>estimated</u> number of unique potentially responsive records (not pages) returned after completion of the agency's initial search; and
   b. The <u>estimated</u> number of pages [of] potentially responsive records returned after completion of the agency's initial search.

On May 23, 2020, after receiving no response to these questions, Plaintiff's counsel prepared and transmitted to Defendant's counsel a draft Joint Status Report indicating that these questions remain, but that if the parties could answer them, they would no longer need to be included in the JSR. To facilitate meaningful conferral, Plaintiff's counsel requested Defendant's positions by no later than Wednesday, May 27, 2020. At 9:09 p.m. on Friday, May 29, 2020, Defendant's counsel emailed counsel for the Plaintiff an alternative proposed draft JSR, which addresses only the questions that appear in strikethrough font above.

Efforts to narrow the scope of a FOIA request, and the requestor's response, bear directly on CBP's entitlement to an *Open America* stay. Dkt. No. 6, Order dated April 16, 2020 (directing the parties to state in their JSR, *inter alia*, 'whether an *Open America* stay is likely in this case'). *See also Energy Future Coalition v. Office of Management and Budget*, 201 F. Supp. 3d 55, 57-59 (describing efforts to narrow the request and their relevance to the due-diligence prong of the *Open America* stay inquiry).

<u>Plaintiff seeks an order from this Court requiring Defendant's responses to Plaintiff's questions regarding search adequacy by no later than **June 15, 2020**, and directing the parties to report the progress of their discussions as to search adequacy in their second Joint Status Report.</u>

### iii.  The Agency's Productions

On Friday, May 29, 2020, at 12:59 p.m., CBP FOIA Division Branch Chief Patrick Howard emailed counsel for the Plaintiff a cover letter stating "CBP FOIA reviewed 105 pages of responsive materials." Later in the day, at 9:09 p.m., CBP notified Plaintiff for the first time that its search had returned roughly 14,000 pages of records, which CBP says it will take nearly 2 ½ years to make available, *if* the agency elects not to seek an *Open America* stay.

The .pdf file CBP sent Plaintiff contains 105 pages of records, including a partially redacted copy of the CBP's Office of Internal Affairs (IA) Report of Investigation (ROI). The includes a sworn Affidavit from a CBP IA Special Agent attesting that the video does not show Plaintiff being physically abused, that she was not handcuffed for the length of time she alleges, and that the audio recording of her detention does not include the verbal abuse she alleges. CBP May 29, 2020, Production (the "First Production") at 21-22.[1] It also includes several time-stamped still photographs of Plaintiff in custody inside the Port-Of-Entry beginning at 2:21 a.m. and ending at 4:29 a.m.

Because these records are irreconcilable with Plaintiff's recollection, Plaintiff believes production of the underlying video and audio materials is the highest priority in this case. CBP's May 29 status report to Plaintiff does not even to make a showing as to audio files cannot be promptly released. Nor does the agency offer Plaintiff or the Court any information sufficient to assess why it is "impossible" to say when the task of redacting video will be complete, or why "not within the next three months" complies with the Act's requirement to make records "promptly available" after locating them. 5 U.S.C. § 552(a)(6)(C)(i). *See also Citizens for Responsibility and Ethics in Washington*

[1] CBP's first production lacks Bates Labels or any other case-related pagination.

*v. Federal Election Commission*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("As to production, FOIA requires that the agency make records 'promptly available,' which, depending on the circumstances typically would mean days or a few weeks of a determination, not months or years.").

Consequently, Plaintiff proposes CBP's FOIA office expend its finite resources on the processing and release of these materials by July 1, 2020, in lieu of continuing additional productions as proposed. Plaintiff anticipates reviewing these records will allow the parties to significantly narrow the issues in this case and bring it to a much speedier resolution than the course proposed by CBP.

Plaintiff seeks an Order from this Court requiring CBP to prioritize processing of the video and audio materials records and releasing those records to Plaintiff no later than **July 1, 2020.**

## D. Anticipated Number of Responsive Documents

Plaintiff believes the parties should meet and confer prior to filing their next Joint Status Report regarding the adequacy of the search CBP alleges it completed to ensure that the current assumptions regarding volume of responsive documents accurately reflect the universe of potentially responsive records an adequate search would return. Such conferral will allow the parties to make informed decisions about whether Plaintiff can narrow her request to reduce the workload for the agency and speed up the process of production.

Plaintiff also anticipates presenting to CBP signed Privacy Waivers for each of the non-CBP personnel with whom she alleges she was illegally arrested, which will obviate the need for as many redactions on audio and video recordings, and in the record, further simplifying CBP's review process.

**E.  Anticipated Release Dates**

Plaintiff objects to Defendant's proposed production schedule because it does not satisfy the FOIA's "promptly available" requirement. In essence, CBP seeks a *de facto Open America* stay. The agency's request for this Court to bless a 2 ½-year rolling production schedule and allow an open-ended, indefinite period to produce the most important records at the heart of this case—the video and audio records—ignores both the language and purpose of the Freedom of Information Act. Plaintiffs therefore oppose CBP's proposed production schedule as it violates 5 U.S.C. §§ 552(a)(6)(C)(i) and *CREW v. FEC*, 711 F.3d 180.

Instead, Plaintiff seeks an order from this Court requiring CBP to prioritize production of the video and audio records and release them to her by **July 1, 2020**.

**F.  *Open America* Stay**

Plaintiff opposes an *Open America* stay because none of the statutorily enumerated requirements is present in this case. 5 U.S.C. § 552(a)(6)(C).

**G.  *Vaughn* Index**

Plaintiff reserves the right to demand a *Vaughn* index if appropriate based on the volume of records and exemptions claimed by CBP. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 170 (D.D.C. 2018) ("the law does not inflexibly require a *Vaughn* index in every FOIA case").

**H.  Additional Issues – The Status of The Pleadings**

This Court should order CBP to timely re-plead no later than **June 15, 2020**, or Plaintiff's Unaddressed Allegations should be deemed admitted.

CBP impermissibly failed to answer more than half of the allegations in Plaintiff's Complaint. Doc. 7 ¶¶ 2, 4, 16-25, 27-73 (hereafter collectively referred to as the

"Unaddressed Allegations"). As a result, on May 23, 2020, Plaintiff's counsel informed counsel for CBP of her intent to seek an order deeming these allegations admitted if CBP fails to re-plead and answer them within twenty-one (21) days. CBP's counsel did not respond to this request. Should the Court wish to order CBP to supplement its pleadings *sua sponte*, the following supports such an order.

CBP's Answer fails to comply with Federal Rule of Civil Procedure 8(b). CBP avers that the agency should be excused from responding to 46 of the 90 paragraphs in the Complaint because they purportedly "contain allegations that are immaterial to this action, to which no response is required." Dkt. No. 7 ¶¶ 2, 4, 16-25, 27-73. In its second affirmative defense, CBP asserts that Plaintiff's Complaint "contains material that is irrelevant to this FOIA case and does not comply with Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Dkt. No. 7 at 5. CBP is mistaken.

As a procedural matter, CBP abandoned the vehicle available to all defendants facing what they believe are immaterial or irrelevant allegations: a motion to strike under Fed. R. Civ. P. 12(f). CBP chose not to do file such a motion, likely recognizing that such motion would be "generally disfavored" because it proposes "a drastic remedy" and is "often a time-waster." *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 229 (D.D.C. 2017) (internal citations and quotation marks omitted). Instead, CBP elected to simply ignore the Unaddressed Allegations wholesale by characterizing them as "immaterial." But Rule 8(b) and Rule 12(f) foreclose this choice.

As a substantive matter, CBP is simply incorrect about the relevance and materiality of the Unaddressed Allegations. These paragraphs, which are incorporated by reference into Plaintiff's claims for relief, bear directly on issues at the core of this

action, including (a) whether Plaintiff is entitled to expedited processing; (b) whether CBP conducted an adequate search; (c) whether CBP's asserted exemptions are supported by the facts; and (d) Plaintiff's eligibility or and entitlement to attorney's fees.

Plaintiff expects CBP to take the position that FOIA cases only involve two issues—search adequacy and the propriety of the agency's claimed withholdings. While this is generally true, assessing whether the agency conducted an adequate search and assessing whether the agency properly applied the law for each exemption both involve considering the particular facts underlying the request, and the nature of the responsive records the agency locates.

Begin with the allegations in Paragraphs 2 and 4, which CBP avers are immaterial. In Paragraph 2, Ms. Sabra alleges the date on which she and several other individuals presented Syrian asylum-seekers for processing at CBP's San Ysidro Port-of-Entry. Compl. ¶ 2. In Paragraph 4, she alleges suffering severe injuries as a result of her physical abuse in the port-of-entry by CBP officials, and that she filed written complaints with CBP and the Department of Homeland Security. The truth or falsity of these allegations is relevant to the adequacy of CBP's search, which is a core issue this Court will eventually have to resolve in this case. Search adequacy "is measured by a standard of reasonableness and depends on the individual circumstances of each case." *Gordon v. Cutter*, 118 F. Supp. 3d 276, 284 (D.D.C. 2015).

Here, a CBP admission that Plaintiff submitted these requests will support Plaintiff's position that a search "reasonably calculated to locate records responsive to Plaintiffs' requests" would query all offices that received or processed Plaintiff's written complaint, as well as any custodians of records CBP received from or sent to the other DHS agency components with which Plaintiff filed written complaints.

Continue to Paragraphs 16-25, where Plaintiff offers specific and detailed allegations about the papers CBP seized from her and the others with whom she was allegedly arrested and falsely imprisoned, and the sequence of events that occurred. CBP has reportedly located at least some video footage responsive to Plaintiff's request. CBP's answer to the allegations in paragraphs 16-25 will not only allow Plaintiff and the Court to address whether these videos appear to be complete, and thus, whether the search was reasonably calculated to locate responsive records, but also will allow the Court to conduct the balancing analysis Congress requires for Exemptions 5, 6 and 7. *See generally Schoenman v. Federal Bureau of Investigation*, 576 F. Supp. 2d 3, 5 (D.D.C. 2008) ("it is not the nature of the files in which the information is contained, but rather the balance of private and public interests that determines [Exemption 6]'s scope.") (citing *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598 (1982)).

In weighing the public's interest in disclosure, whether the records would tend to shed light on government misconduct is a relevant aspect of the court's balancing analysis. *See, e.g.*, *Bloomgarden v. Nat'l Archives & Records Admin.*, 344 F. Supp. 3d 66, 76 (D.D.C. 2018) (observing that "the public does have an interest in knowing how the agency or department in question dealt with the misconduct."); *Black v. U.S. Dep't of Justice*, 69 F. Supp. 3d 26, 36 (D.D.C. 2014) (describing the relevance of allegations of government wrongdoing to the balancing analysis required by Exemptions 6 and 7(C)).

Concluding with paragraphs 27-73, Plaintiff makes extensive, detailed, and specific allegations of government wrongdoing by named CBP officials that will bear directly on the balancing analysis the court will conduct to determine what CBP can withhold pursuant to Exemptions 6 and 7(c). *See Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 3d 77, 85 (D.D.C. 2009) (describing relevance of alleged government misconduct

13

to the public interest in conducting the balancing test required by Exemptions 6 and 7(C)). Moreover, these allegations will inform the Court's analysis of whether CBP's claimed 7(E) Exemptions are appropriate. And paragraph 73 makes a specific allegation, based on statistical analysis, that Plaintiff's civil rights complaint to CBP has only a 1-in-20 shot of being addressed by CBP's investigators. These facts are those anything but "immaterial" to this action, as CBP claims, because their truth or falsity will tend to make it more likely than not that she will prevail on her efforts to require CBP to conduct an adequate search, and to refrain from unlawfully withholding non-exempt material. *See Barnard v. Dep't of Homeland Security*, 598 F. Supp. 2d 1 (D.D.C. 2009).

Finally, all of the Unaddressed Allegations are directly relevant to Plaintiff's entitlement for a discretionary award of attorney's fees. To decide whether such an award is proper, the court will need to analyze (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *Davy v. Central Intelligence Agency*, 550 F. 3d 1155, 1159 (D.C. Cir. 2008). Here, the records Plaintiff seeks will, she believes, demonstrate not only that she was treated unlawfully by border agents, but also that CBP's Internal Affairs office covered it up.

In sum, CBP must either have the Unaddressed Allegations deemed admitted or be ordered to provide a more definite statement as to each of them. CBP's refusal to respond to these allegations fails to comply with the agency's obligation of conducting a good-faith investigation before answering under Fed. R. Civ. P. 8(b). *See Djourabchi v. Self*, 240 F.R.D. 5, 12 (D.D.C. 2006) ("[A] party may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An

14

averment will be deemed admitted when the matter is obviously one to which a defendant has knowledge or information. . . . Moreover, a party may be held to the duty to exert reasonable effort to obtain knowledge of such a fact.") (cleaned up). CBP has access to the information and knowledge necessary to meet Plaintiffs' allegations. By failing to respond based on lack of that knowledge or information, the agencies have failed to comply with Rule 8(b).

Dated: June 1, 2020                     Respectfully submitted,

                                        /s/ R. Andrew Free
                                        **R. Andrew Free, D.D.C. Bar No. 59830**
                                        **Law Office of R. Andrew Free**
                                        P.O. Box 90568
                                        Nashville, TN 37209
                                        Tel. 844-321-3221x1
                                        Fax: 615-829-8959
                                        Andrew@immigrantcivilrights.com

                                        *Counsel for Plaintiffs*