Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLETA CHRISTINA C. SABRA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:20-cv-00681-CKK |
| | ) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF PATRICK A. HOWARD

I, Patrick A. Howard, declare as follows:

1.      I am a Branch Chief in the Freedom of Information Act (FOIA) Division, Privacy and Diversity Office, Office of the Commissioner, U.S. Customs and Border Protection (CBP). I have been a Branch Chief in the FOIA Division in Washington, D.C. since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to the FOIA, the processing of certain requests submitted to CBP pursuant to 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.      I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of Government Information Specialists responsible for processing requests for release of CBP documents and information, assist with FOIA litigation matters, and I am personally familiar with the processing of FOIA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3.      All information contained herein is based upon information furnished to me in my official capacity, and the statements I make in this declaration are based on my personal knowledge, which includes

knowledge acquired through, and agency files reviewed in, the course of my official duties as Branch Chief in CBP's FOIA Division.

4.     The purpose of this declaration and the attached *Vaughn* Index is to provide additional information as to why certain information was withheld from public disclosure pursuant to 5 U.S.C. §§ 552 (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F).

## PLAINTIFF'S REQUEST TO CBP

5.     I am familiar with the FOIA request submitted by Fleta Christina Sabra (hereinafter Plaintiff) and received by the CBP FOIA Office on May 5, 2017. I am also familiar with the Plaintiff's allegations in this litigation.

6.     In her FOIA request, Plaintiff requested all agency records related to the encounter between plaintiff and CBP officials on or about September 11–12, 2015 at the Otay Mesa or San Ysidro ports of entry.  Plaintiff's original FOIA request is attached as Exhibit A.

## CBP'S RESPONSE TO PLAINTIFF'S REQUEST

7.     In response to Plaintiff's Request, CBP conducted an extensive search for responsive records from March 24 – April 28, 2020, and again in October, 2020 based on a supplemental request for additional records. Specifically, the CBP Office of Professional Responsibility, Office of Field Operations, U.S. Border Patrol, Office of Information Technology, and Office of Chief Counsel  conducted searches for responsive records.  The search for responsive records included the following:

a.     CBP's Office of Information Technology (OIT) conducted a search of the e-mail accounts of five CBP employees identified as potential witnesses to the encounter between Plaintiff and CBP.  The five employees were identified based on a review of the report of investigation prepared in response to Plaintiff's complaint to CBP.  OIT ran a search of these five employees' email, both sent and received, between September 11, 2015, and March 10, 2016 (the date identified by

Plaintiff as the date of the encounter with CBP through the following six months), for the following six disjunctive search terms:

1. Sabra

2. Cousinsabra

3. Cousin-Sabra

4. Syria

5. Syrian

6. Syrians

The e-mail search located approximately 155 potentially responsive e-mail messages, comprising 13,794 pages of records.  Of those, 13,740 pages were nonresponsive and 54 pages of responsive records were released to plaintiff, subject to redactions.

b.      CBP's Office of Field Operations (OFO) conducted a search of the Secured Integrated Government Mainframe Access (SIGMA) database, using information contained in an unredacted version of the I-213 that CBP provided to Plaintiff in redacted form on or about August 5, 2016. This search located one responsive four-page document, which was released to plaintiff, subject to redactions.

c.      CBP's OFO conducted a second search, based on a request from plaintiff to search for additional records related to the individuals with whom plaintiff was traveling on the day of her interaction at the CBP port of entry.  This search located 147 pages of responsive records, which were released to plaintiff, subject to redactions.

d.      OFO also conducted a search of the Enforcement Action Statistical Analysis and Reporting System (E-STAR), using the encounter location, encounter date, and Plaintiff's full name.  OFO

reviewed all reported uses of force in the San Diego Field Office (which includes both the Otay Mesa and San Ysidro Ports of Entry) for the entire month of September 2015, as well as the months of August and October.  This search located no records responsive to Plaintiff's request.

e.      CBP's Office of Professional Responsibility (OPR) conducted a search of the Joint Integrity Case Management System (JICMS), using Plaintiff's full name and date of birth.  This search located an 89-page Report of Investigation (ROI) with evidentiary exhibits, including three recorded interviews, as well as audio and video recordings of the encounter at the port of entry. The ROI and the video/audio recordings were released to plaintiff, subject to redactions.

f.      A review of CBP's Chief Counsel Tracking System (CCTS) for "Sabra," "Cousinsabra," or "Cousin-Sabra," located six potentially responsive documents.  Three of these documents were withheld in full under exemption (b)(5), as attorney work-product privileged information.  The other three documents are official documents from Plaintiff's prior Federal Tort Claims Act (FTCA) administrative claim and subsequent FTCA lawsuit against CBP in the Southern District of California, including Plaintiff's 12-page FTCA administrative claim, Plaintiff's 10-page FTCA complaint filed in the Southern District of California, and Plaintiff's two-page JS 44 Civil Cover Sheet from that complaint; as well as another copy of the 89-page OPR ROI discussed above. These responsive records were released to plaintiff, subject to redactions.

8.      In total, the search for responsive records resulted in 14,170 pages, 3 audio files, and 8 video files of potentially responsive records. Upon review, 430 pages and all audio and video files were deemed responsive to Plaintiff's request. Of those, 11 pages were withheld in full based on FOIA exemption (b)(5), 24 pages were deemed already in Plaintiff's possession, and 395 pages and all audio and video files were released with partial redactions, explained in detail in the attached *Vaughn* index. Responsive records were released to Plaintiff's counsel on May 29, June 11, June 23, August 7, September 23, and November 12,

2020.  See Exhibit B.

## JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA

### Exemption (b)(5)

9.      Section 552(b)(5) of Title 5 of the U.S. Code exempts from disclosure "inter- agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."

10.     As explained in greater detail in the attached Index, in this case, Exemption (b)(5) has been applied with respect to internal inter-agency and intra-agency memoranda, communications, correspondence, and reports created less than 25 years prior to the record request in this case. Within those records, information protected from disclosure by the attorney work-product privilege was withheld.

11.      CBP invoked Exemption (b)(5) based on the attorney work-product privilege in instances where records contained memoranda prepared by an Agency attorney in contemplation of litigation, or reflected communication between an Agency attorney and a Department of Justice attorney concerning litigation in which the Agency was a named party.  Specifically, the records withheld under Exemption (b)(5) were assessments of the merits of Plaintiff's FTCA claim against the Agency, incorporating both factual materials and legal analysis, communication with DOJ counsel about Plaintiff's FTCA claim, and a litigation hold notice related to Plaintiff's FTCA claim.  The purpose of the attorney work-product privilege is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny and thereby facilitating candid communication between the Agency and its attorneys.

12.     Release of the attorney work-product materials withheld under Exemption (b)(5), could reasonably be expected to have a chilling effect on the Agency's ability to seek and receive legal advice in matters that are the subject of litigation.

**Exemption (b)(6)**

13.     Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure certain records and information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." This exemption requires balancing the public's right to disclosure against an individual's right to privacy. In this case, the information CBP withheld is exempt from disclosure because the privacy interests in that information outweigh the public interest in its disclosure.

14.     As explained in greater detail in the attached Index, in this case, Exemption (b)(6) has been applied with respect to inspection records that document specific border inspections of travelers. Within these records, Exemption (b)(6) has been applied to protect the personal privacy interests of CBP personnel, travelers whom CBP personnel have encountered at ports of entry, and other members of the public; exemption (b)(6) has been applied to: (1) personally identifiable information of government employees, including information that could identify CBP personnel involved in law enforcement functions; (2) information regarding the subjects of records; and (3) information regarding individuals mentioned in records (*e.g.*, co-travelers or other individuals identified or mentioned by the subject of a record).

15.     CBP withheld, pursuant to Exemption (b)(6), biographic and biometric personally identifiable information related to specific employees, such as names, signatures, photographs or images, contact information, telephone numbers, email addresses, physical addresses, physical descriptions, badge numbers, and identification numbers and other unique identifiers that could identify CBP or other government personnel involved in a border inspection, compiling records, processing complaints, or compiling information. Release of this information would constitute a clearly unwarranted invasion of privacy. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Similarly, government employees have a protectable privacy interest in their contact information that would also be threatened by disclosure.

Release of this information would not shed light on the actions of CBP and there is no public interest in the disclosure of this information. Accordingly, the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

16.     Pursuant to Exemption (b)(6), CBP withheld personally identifiable information regarding members of the public that, if released, could impair the personal privacy interests of those members of the public. Federal officials handling personal information may not disclose personal information to a third party, except in accordance with the Privacy Act and consistent with the routine uses identified in the System of Records Notices published in connection to each system of records at issue. In this case, after the agency's processing of potentially responsive records was well underway, Plaintiff submitted authorization, in the form of Privacy Act Waivers, from her traveling companions at the port of entry. As a result, records reviewed and prepared for release after the waivers were submitted did not have the personal information of those individuals redacted. Other third party individuals, however, do maintain privacy interests in their own information, and disclosure is only authorized in accordance with the requirements of the Privacy Act.

17.     CBP also withheld, pursuant to Exemption (b)(6), personally identifiable information regarding members of the public who were mentioned in agency records but are not the subject of the record. For example, this includes individuals who are mentioned by the subject of the record or otherwise associated with the subject of the record. Individuals have a privacy interest in protecting their identities, and in choosing whether to disclose their association with an individual who is the subject of a particular government record. This is particularly true where information is supplied by a third party member of the public, and may or may not be accurate. Consequently, any information regarding members of the public who were mentioned in a record but not the subject of the record has been withheld pursuant to Exemption (b)(6). The same categories of information that were withheld with respect to subjects of

records was withheld with respect to members of the public who were mentioned in records but are not the subject of the record.

18.    Third party individuals have a protectable privacy interest in their identities and personally identifiable information that would be threatened by disclosure. Accordingly, the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing the information. On that basis, CBP withheld information pursuant to Exemption (b)(6).

**Exemption (b)(7)(C)**

19.    Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that are "compiled for law enforcement purposes." The records at issue in this case were compiled for law enforcement purposes in that the information is created and used by CBP in its law enforcement mission to secure the border of the United States.

20.    Section 552(b)(7)(c) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This exemption extends to CBP as a law enforcement agency. Exemption (b)(7)(C) is designed to protect, among other things, law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identity. The privacy interest in the identity of an individual in the redacted document outweighs any public interest in disclosure of that information.

21.    The records provided in response to Plaintiff's request were compiled for law enforcement purposes in that the information contained within these records is created and used by CBP in its mission to secure the borders of the United States. Government employees have a protectable privacy interest in their identities that would be compromised by the release of this information. Similarly, the third party individuals whose personally identifiable information and other identifying details appear in the records

have a protectable privacy interest in their identities that would be compromised by the release of this information. In addition, identifying the specific individuals whose information was withheld would not serve a public purpose. Accordingly, the individual's right to privacy outweighs whatever public interest, if any, might exist in knowing this information. Exemption (b)(7)(C) has been applied to the same categories of records and types of information to which Exemption (b)(6) was applied, when the information was compiled for law enforcement purposes and could reasonably be expected to constitute an unwarranted invasion of personal privacy. As explained in greater detail in the attached Index, in this case, Exemption (b)(7)(C) has been applied with respect to inspection records that document specific border inspections of travelers and certain information contained within complaint records and the records related to the investigation of such complaints.

22.     Within these records, Exemption (b)(7)(C) has been applied to protect the personal privacy interests of CBP personnel, travelers whom CBP personnel have encountered at ports of entry, and other members of the public; exemption (b)(7)(C) has been applied to: (1) personally identifiable information of government employees, including information that could identify CBP personnel involved in law enforcement functions; (2) information regarding the subjects of records; and (3) information regarding individuals mentioned in records (*e.g.*, co-travelers or other individuals identified or mentioned by the subject of a record).

23.     Pursuant to Exemption (b)(7)(C), CBP has withheld personal information contained in documents maintained and compiled for law enforcement purposes, including law enforcement policies, memoranda and a presentation materials; certain information compiled internally during consideration of incoming complaints, queries, or redress requests when that information would constitute a clearly unwarranted invasion of personal privacy.

24.     Pursuant to Exemption (b)(7)(C), CBP has also withheld personal information in documents

maintained in TECS, which contains enforcement, inspection, and intelligence records which are relevant to the customs, immigration, agriculture, national security, border security, anti-terrorism and law enforcement missions of CBP and numerous other Federal agencies that it supports. TECS is one of the primary tools that CBP law enforcement officers, and other personnel with authorized access, regularly use, in order to effectively and efficiently enforce all applicable laws, particularly as it relates to travelers and trade crossing the border into or out of the United States. CBP has also redacted certain personal information taken from TECS records and incorporated into other documents as well as other related documents compiled by CBP. The records at issue were compiled for law enforcement purposes in that the information is collected and used by CBP in its mission to secure the border of the United States.

25.     TECS, which is principally owned and managed by CBP, is an overarching law enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database. This environment is comprised of several modules designed to collect, maintain, and vet data as well as conduct analysis, risk assessments, and information sharing. TECS contains temporary and permanent enforcement, inspection, and intelligence records relevant to the law enforcement mission of CBP and numerous other federal agencies that it supports. TECS is CBP's principal law enforcement and anti-terrorism data base system. TECS is described in further detail in the Federal Register at 73 Fed. Reg. 77778 (Dec. 19, 2008).

### Exemption (b)(7)(E)

26.     Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that are "compiled for law enforcement purposes." The records at issue in this case were compiled for law enforcement purposes in that the information is created and used by CBP in its law enforcement mission to secure the border of the United States.

27.     Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from disclosure law enforcement records

or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

28.     The effectiveness of CBP's mission is dependent to a large extent on the use of sensitive investigative techniques and methods that are not known to the general public. These law enforcement techniques and procedures are critical tools used by CBP officers to efficiently and effectively carry out CBP's mission to secure the border and to prevent threats, including terrorists, their weapons, and other dangerous items, from entering the United States, and to enforce customs, immigration, agriculture and other federal laws at the border. The disclosure of these techniques and methods would seriously compromise CBP's ability to perform its law enforcement mission at the border.

29.     As explained in greater detail in the attached Index, in this case, Exemption (b)(7)(E) has been applied with respect to inspection records that document specific border inspections of travelers; certain information contained within complaint records, and information contained within records related to the investigation of such complaints, to the extent that such information would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions because such disclosure could reasonably be expected to risk circumvention of the law.

30.     Within those records, Exemption (b)(7)(E) has been applied to (1) information that would reveal the subjects of specific law enforcement interest; (2) information regarding specific law enforcement techniques and operational vulnerabilities; (3) information that, in the aggregate, reveals trends and/or specific law enforcement capabilities and techniques employed in particular operational locations, which can reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations; and (4) computer codes and other information that can expose CBP computer systems to a risk of

unauthorized access or navigation.

31.    CBP withheld, pursuant to Exemption (b)(7)(E) information that would reveal the subjects of specific law enforcement interest. This includes the application of Exemption (b)(7)(E) to TECS and other records containing remarks and analysis specific to particular individuals. The records at issue here, among other things, contain information regarding border inspections; the identification of law enforcement agencies and officers involved, contact information, and respective roles; and actions to be taken by law enforcement officers. The release of this information would have the unintended and undesirable effect of placing these law enforcement techniques and strategies in the public domain, in the possession of the specific individuals whose records are at issue, and at the disposal of other similarly situated individuals; educating them as to the investigative techniques used and thereby assisting them to devise methods to evade detection and apprehension; and, ultimately, impairing the effectiveness of those law enforcement techniques.

32.    CBP withheld, pursuant to Exemption (b)(7)(E), information regarding specific law enforcement techniques and operational vulnerabilities. This includes information regarding why a particular law enforcement action (including the selection of a traveler for additional screening measures) was undertaken in any specific case. In addition, the records at issue reveal certain interagency techniques through the integration or referencing of data belonging to third-party agencies or departments. As a preliminary matter, disclosure of such information threatens efforts to foster open communication across agencies and cohesive law enforcement and national security efforts. Because of the interconnectivity between CBP's law enforcement databases and those of other agencies, disclosure of the information contained in the database could have far-reaching effects, impairing other agencies' law enforcement operations or their ability to effectively carry out their respective missions. Knowledge of this information would increase the risk of circumvention of laws and regulations, compromise the electronic records

system, facilitate improper access to sensitive investigatory and other law enforcement records, impede effectiveness of law enforcement activities, and endanger agency investigative practices and techniques.

33.     In addition to information that, in any particular instance, could reveal the nature of CBP's law enforcement interest or concern, pursuant to Exemption (b)(7)(E), CBP also withheld information that would reveal law enforcement techniques, abilities, and procedures when aggregated. For example, certain information, in the aggregate, reveals trends and/or specific law enforcement capabilities and techniques employed in particular operational locations, which can reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations. This is especially true given the broad nature of the Plaintiff's request and the sheer volume of law enforcement records at issue. Moreover, the TECS records include date stamps, locations where specific law enforcement actions took place, internal IP addresses, contact information and communication methods, instructions on handling inspections of travelers, and similar information that reveals the procedures and techniques used by law enforcement. While some of this data may appear innocuous taken in isolation, such information can place investigative activities in a precise context, pinpoint key players and events, identify critical tools and resources, and reveal the extent and shortfalls of law enforcement's knowledge of criminal or terrorist endeavors and/or immigration violations. Moreover, such information creates a basis for comparison of the handling of different inspections, which could reveal the nature and extent of the government's law enforcement interest in particular situations. Because this information can be used to clarify or predict a CBP officer's behavior in specific circumstances, the risk of circumvention of enforcement efforts or harm to officers or informants is significant.

34.     In addition, the TECS records include information that would reveal the capabilities of TECS, the release of which would impede CBP's law enforcement mission by alerting individuals to how CBP conducts searches of its systems and any limitations. Although a few factors used by CBP officers to

conduct border inspections are in the public domain in court opinions or other contexts, the TECS format itself reveals more about the techniques that CBP officers use to conduct border inspections and assess risk than the information that can be gleaned from publically available information. Because the data fields for entering remarks and analysis in TECS are of limited capacity, an officer creating a TECS entry must prioritize the information he or she believes most essential for another officer's decision about when and how to conduct an inspection. Thus, disclosure of the remarks in TECS would reveal not only information unique to those particular inspections, but also information about inspectional activities generally, such as the kind of information considered important to the exercise of officer discretion, and the relative weight given different factors. Information about such "red flags," if unprotected, could enable individuals to thwart efforts to secure the border and enforce immigration and customs laws. Moreover, information entered into TECS limited data fields must necessarily be abbreviated. Disclosure of this shorthand communication would serve no legitimate public interest, as its meaning would be irretrievably distorted once taken from the tightly-controlled context in which it is created, interpreted, and shared solely by and between law enforcement personnel.

35.     CBP withheld, pursuant to Exemption (b)(7)(E), computer codes and other information that can expose CBP computer systems to a risk of unauthorized access or navigation. Protecting and maintaining the integrity of CBP computer systems is imperative to CBP's ability to effectively and efficiently meet its mission to prevent terrorists, their weapons, and other dangerous items from entering the United States. While DHS/CBP, through its System of Records Notice and Privacy Impact Assessment for its systems, including TECS, have taken considerable efforts to provide the public detailed information regarding CBP systems, without compromising the integrity of the systems, as a critical law enforcement tool employed by CBP to enhance border security, it is imperative that CBP protect TECS and other systems against any potential risk of threat or compromise to ensure CBP is able to effectively carry out its law enforcement

mission. Consequently, Exemption (b)(7)(E) has been applied to codes used within CBP law enforcement systems, including TECS, and specific information regarding how to navigate and use CBP law enforcement systems, because this information may enable an individual knowledgeable in computer systems to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data, and interfere with enforcement proceedings. Specifically, the computer codes at issue facilitate access to, and navigation through, CBP law enforcement systems. Individuals who know the meaning of the codes would have sufficient law enforcement information regarding how CBP conducts its law enforcement operations, which would permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thus corrupting the integrity of ongoing investigations. Public dissemination of these access codes would reveal the technical capabilities of the system and could permit unauthorized users to manipulate records to avoid recognition, detection and apprehension. It would also arm unauthorized users with the ability to corrupt the integrity of the data contained therein through the alteration/manipulation of such data. In addition, if the system were to be hacked, it would permit the intruder to potentially manipulate the way certain records are created and maintained, which could put at risk ongoing investigations and border security operations. Protecting and maintaining the integrity of TECS is imperative in assisting CBP to meet its mission.

36.     Disclosure of the information withheld pursuant to Exemption (b)(7)(E) would reveal techniques used by law enforcement to identify violators and other persons of concern to law enforcement, which would allow wrongdoers to evade detection by law enforcement, thereby circumventing the law and potentially resulting in alteration, loss, damage or destruction of data contained in CBP's computer system.

### Exemption (b)(7)(F)

37.     Section 552(b)(7)(F) of Title 5 of the U.S. Code exempts from disclosure records or information

compiled for law enforcement purposes if production of such records could reasonably be expected to endanger the life or physical safety of any individual.

38.     CBP withheld, pursuant to Exemption (b)(7)(F), information relating to claims of asylum. Releasing information about an asylum claim or asylum seeker into the public domain would put that individual, other asylum seekers, and even those who remain in the country from which the asylum seeker fled, at risk. An asylum seeker's claim inherently supposes a fear of persecution by the authorities of the country of origin. Confidentiality in asylum procedures is particularly important because of the vulnerable situation in which asylum seekers find themselves. Because asylum seekers are, by definition, fleeing persecution, release of information relating to an asylum claim can be reasonably expected to endanger the life or physical safety of the individual making the asylum claim and others who may be impacted by the release of information related to the claim, including the fact that such a claim was made. Concern for the safety of asylum seekers is also reflected in 8 CFR 208.6, which forbids the Agency from the disclosure or public release of information about asylum claims or the individuals who make them.

## SEGREGABILITY

39.     Plaintiff has been provided with all responsive records pursuant to its request. Where appropriate, CBP asserted FOIA exemptions in the released records. All information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material. CBP personnel have reviewed the documents determined to be responsive, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and all reasonably segregable portions of the relevant records have been released to the Plaintiff in this matter. In addition, CBP personnel reviewed the audio/video recordings determined to be responsive, frame by frame, to identify information exempt from disclosure or for which a discretionary

waiver of exemption could apply, and all reasonably segregable portions of the relevant records have been released to the Plaintiff in this matter.

40.     In my determination, any further release of the exempted materials could reasonably be expected to lead to the harms described herein.

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 10th day of March 2021.


*Patrick Howard*
_____
Patrick A. Howard, Branch Chief

FOIA Division
Privacy and Diversity Office
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security


Attachment

*Vaughn* Index - Sabra v. CBP, No. 20-00681 (D.D.C.)

| File | Page Numbers | Document Type | Disposition | Description and Applicable Exemptions |
|---|---|---|---|---|
| Documents referenced in release letter dated May 29, 2020 | n/a | Legal opinions, recommendations, and communication related to Plaintiff's FTCA claim and litigation against CBP | Withheld in full | Records created by attorneys in connection with Ms. Sabra's FTCA claim and litigation:<br><br>Exemption (b)(5) was applied to three records in their entirety based on the attorney work-product privilege.  The first record is a memorandum conveying Agency counsel's legal advice and analysis to CBP's Director of the National Finance Center, concerning Plaintiff's FTCA claim against CBP.  The second record is email communication between the Assistant U.S. Attorney and Agency counsel concerning the related FTCA litigation of Plaintiff's claim.  The third record is the litigation hold notice generated by the FTCA litigation of Plaintiff's claim. |
| 2017-055103 | 1-4 | Records documenting inspections of travelers and other law enforcement activities | Released with partial redactions | Records compiled for law enforcement purposes to document border inspections of individual travelers and information derived therefrom:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifying information of both government employees and third party individuals that would identify those individuals if released.  Government employees, including CBP law enforcement officers, and third party individuals have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could |

| | | | | be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the criteria used as the basis for selecting individuals for additional inspection procedures, and information compiled for law enforcement purposes, which is not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who are seek to violate immigration and customs laws. |
| | 5-16 | DHS Office of Inspector General correspondence re: referral to Joint Intake Center and supporting information | Released with partial redactions | Referral of complaint from the DHS Office of Inspector General to the Joint Intake Center:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any |

| | | | | |
|---|---|---|---|---|
| | | | | information related to an asylum seeker is forbidden by 8 CFR 208.6. Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| | 17-105 | Office of Internal Affairs Report of Investigation and Exhibits 1-17 | Released with partial redactions | Report of Investigation by CBP's Office of Internal Affairs (San Diego, CA) and supporting documentation: <br><br> Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. <br><br> Exemption (b)(7)(E) has been applied to internal codes and database information, including the case number assigned to the investigation of the complaint at issue, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. <br><br> Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any |

| | | | | |
|---|---|---|---|---|
| | | | | information related to an asylum seeker is forbidden by 8 CFR 208.6. Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| OPR Second Set | 1-89 | Office of Internal Affairs Report of Investigation and Exhibits 1-17 | Released with partial redactions | Report of Investigation by CBP's Office of Internal Affairs (San Diego, CA) and supporting documentation:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy.<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, including the case number assigned to the investigation of the complaint at issue, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6. Release of such sensitive information would be an unwarranted invasion |

| | | | | |
|---|---|---|---|---|
| | | | | of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| Email File 9 | 1-4 | Email and attachment | Released with partial redactions | Email correspondence regarding internal affairs investigation of the complaint at issue and attachment: Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. Exemption (b)(7)(E) has been applied to internal codes and database information, including the case number assigned to the investigation of the complaint at issue and administrative codes pertaining to the employee email system, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6.  Release of such sensitive information would be an unwarranted invasion |

| | | | | of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
|---|---|---|---|---|
| Email file 13 | 1-8 | Email correspondence | Released with partial redactions | Email correspondence regarding internal affairs investigation of the complaint at issue and attachment:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) have been applied to internal codes and other administrative information associated with CBPs email system that would identify CBP employees if released and would, either standing alone or when combined with other information, present a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, associated with CBP's law enforcement systems, including the SIGMA enforcement system, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such |

| | | | | systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6.  Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| | 9-17 | Personal Search Worksheets and supporting documents | Released with partial redactions | Worksheets prepared by CBP Officers to document personal searches performed as part of a border inspection:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. |

| | | | | |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the criteria used as the basis for selecting individuals for additional inspection procedures, and information compiled for law enforcement purposes, which is not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws. |
| | 18-43 | Documents related to the inspection of travelers | Released with partial redactions | Documents related to the inspection of travelers, including SIGMA data, TECS records, and custody log information:<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the criteria used as the basis for selecting individuals for additional inspection procedures, and information compiled for law enforcement purposes, which is not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement |

| | | | | community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6.  Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| | 44-48 | Encounter History | Released with partial redactions | Encounter history documents and screenshots regarding Ms. Sabra's encounters with CBP:<br><br>Exemption (b)(7)(E) has been applied to internal codes, database information, and port codes, which the Agency considers law enforcement sensitive information.  This information is not generally |

| | | | | known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. |
| | | | | Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have also been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6.  Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| | 49-50 | Email | Released with partial redactions | Email requesting an incident report related to Ms. Sabra's encounter with CBP: |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release |

| | | | | |
|---|---|---|---|---|
| | | | | of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) have been applied to internal codes and other administrative information associated with CBPs email system that would identify CBP employees if released and would, either standing alone or when combined with other information, present a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have been applied to information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR 208.6.  Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public. |
| Video files | n/a | Video recordings of Ms. Sabra's encounters with CBP | Released with partial redactions | Video recordings of Ms. Sabra's encounter with CBP at the port of entry:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the images and names (including images of name tags) of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such |

| | | | | |
|---|---|---|---|---|
| | | | | information.<br><br>Exemptions (b)6), (b)(7)(C) and (b)(7)(E) have also been applied to images of official CBP documents visible in a workspace area because the content of the documents includes personally identifiable information for both CBP employees and third parties, as well as information revealing law enforcement techniques and procedures, including the criteria used as the basis for selecting individuals for additional inspection procedures, and information compiled for law enforcement purposes, which is not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who are seek to violate immigration and customs laws. |
| Audio files 1-3 | n/a | Audio recordings of Ms. Sabra's interview with investigators following her complaint | Released with partial redactions | Audio recordings of the interview conducted by Agency Internal Affairs investigators of Ms. Sabra concerning her allegations of misconduct during her encounter with CBP at the port of entry:<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy.<br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) have been applied to discussion of information relating to individuals seeking asylum.  Release of any information related to an asylum seeker is forbidden by 8 CFR |

| | | | | |
|---|---|---|---|---|
| | | | | 208.6.  Release of such sensitive information would be an unwarranted invasion of privacy and could reasonably be expected to endanger the life or physical safety of not only the named individuals seeking asylum, but also others (whether asylum seekers or individuals remaining in the countries from which the asylum seekers fled), who would be at risk should such information become public.<br><br>Exemption (b)(7)(E) has been applied to discussion of internal codes and database information, which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. |
| Akram Alloush records | 1-32 | Documents related to the inspection of traveler Akram Alloush | Released with partial redactions | Documents related to the inspection of traveler Akram Alloush, including traveler details, Discretionary Authority Checklist for Alien Applicants, I-213 Record of Deportable/Inadmissible Alien, I-296 Notice to Alien Ordered Removed/Departure Verification, I-860 Notice and Order of Expedited Removal, I-867A Record of Sworn Statement, M-444 Information about Credible Fear Interview, including SIGMA data and TECS records:<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. |

| | | | | Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Please note that exemption (b)(3) was applied to redacted material on pages 4 and 5 in error.  The material coded as exempt per (b)(3) is actually exempt per (b)(7)(E), as noted on the record. |
| Khadija Aloush records | 1-28 | Documents related to the inspection of traveler Khadija | Released with partial redactions | Documents related to the inspection of traveler Khadija Aloush, including traveler details, Discretionary Authority Checklist for Alien Applicants, I-213 Record of Deportable/Inadmissible Alien, I-862 Notice to Appear, and I-877 Record of Sworn Statement, including SIGMA data and TECS |

| | | | | |
|---|---|---|---|---|
| | | Aloush | | records:<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal |

| | | | | privacy that outweighs the public interest in disclosure of such information.

Please note that exemption (b)(3) was applied to redacted material on pages 4 and 5 in error.  The material coded as exempt per (b)(3) is actually exempt per (b)(7)(E), as noted on the record. |
| Nanssi Aloush records | 1-16 | Documents related to the inspection of traveler Nanssi Aloush | Released with partial redactions | Documents related to the inspection of traveler Nanssi Alloush, including traveler details, Discretionary Authority Checklist for Alien Applicants, I-213 Record of Deportable/Inadmissible Alien, and I-862 Notice to Appear, including SIGMA data and TECS records:

Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.

Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law |

| | | | | enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Please note that exemption (b)(3) was applied to redacted material on page 3in error.  The material coded as exempt per (b)(3) is actually exempt per (b)(7)(E), as noted on the record. |
|---|---|---|---|---|
| Nooreddin Aloush records | 1-28 | Documents related to the inspection of traveler Nooreddin Aloush | Released with partial redactions | Documents related to the inspection of traveler Nooreddin Aloush, including traveler details, Discretionary Authority Checklist for Alien Applicants, I-213 Record of Deportable/Inadmissible Alien, I-296 Notice to Alien Ordered Removed/Departure Verification, I-860 Notice and Order of Expedited Removal, I-867A Record of Sworn Statement, M-444 Information about Credible Fear Interview, including SIGMA data and TECS records :<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated |

| | | | | and exploited to promote circumvention of the law. |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.  Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.  Please note that exemption (b)(3) was applied to redacted material on pages 4 and 5 in error.  The material coded as exempt per (b)(3) is actually exempt per (b)(7)(E), as noted on the record. |
| Salah Alloush | 1-37 | Records related to the inspection of | Released with partial | Documents related to the inspection of traveler Nooreddin Aloush, including traveler details, Discretionary Authority Checklist for Alien |

| records | | traveler Salah Alloush | redactions | Applicants, I-213 Record of Deportable/Inadmissible Alien, I-296 Notice to Alien Ordered Removed/Departure Verification, I-860 Notice and Order of Expedited Removal, I-867A Record of Sworn Statement, M-444 Information about Credible Fear Interview, including SIGMA data and TECS records : |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law. |
| | | | | Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that |

| | | | | |
|---|---|---|---|---|
| | | | | would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information.<br><br>Please note that exemption (b)(3) was applied to redacted material on pages 4 and 5 in error.  The material coded as exempt per (b)(3) is actually exempt per (b)(7)(E), as noted on the record. |
| Shero Alloush records | 1-6 | Records related to the inspection of traveler Shero Alloush | Released with partial redactions | Documents related to the inspection of traveler Shero Alloush, including traveler details, SIGMA data and TECS records:<br><br>Exemption (b)(7)(E) has been applied to internal codes and database information, record identification numbers, web addresses for database portals, and site codes, all of which the Agency considers law enforcement sensitive information.  This information is not generally known or publicly disclosed and release of such information, either standing along or when combined with other information, presents a risk that CBP systems could be compromised or, in the event that such systems were compromised, that they could be more effectively navigated and exploited to promote circumvention of the law.<br><br>Exemption (b)(7)(E) has also been applied to information revealing law enforcement techniques and procedures, including the names of specific ongoing investigations, the names of operational teams, and database query results that are the basis for selecting individuals for additional inspection procedures, all of which is compiled for law enforcement purposes and not generally known or publicly disclosed.  Disclosure of this information would be detrimental to both CBP and the greater law enforcement community because it would enable individuals to alter their patterns of conduct, adopt new methods of operation, effectuate |

| | | | | countermeasures, and take other proactive steps to alter their behavior in order to avoid detection and circumvent the law.  Disclosure of such law enforcement techniques and procedures would corrupt the integrity of law enforcement and other screening activities at the border, thereby aiding individuals who seek to violate immigration and customs laws.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to the names and other personally identifiable information of government employees that would identify those individuals if released.  Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of such information would constitute an unwarranted invasion of personal privacy that outweighs the public interest in disclosure of such information. |
|---|---|---|---|---|

Exhibit A



# Freedom of Information/Privacy Act Request

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form G-639**
OMB No. 1615-0102
Expires 03/31/2017

**NOTE:** Use of this request is optional. Any written format for a Freedom of Information or Privacy Act request is acceptable.
▶ **START HERE - Type or print in black ink.**

## Part 1. Type of Request

Select **only one** box.

**NOTE:** If you are filing this request on behalf of another individual, respond as it would apply to that individual.

**1.a.** ☐ Freedom of Information Act (FOIA)

**1.b.** ☒ Privacy Act (PA)

**1.c.** ☐ Amendment of Record (P A only)

## Part 2. Requestor Information

**1.** Are you the Subject of Record for this request?

☒Yes ☐No

If you answered "No" to **Item Number 1.**, provide the information requested in **Part 2.** If you answered "Yes" to **Item Number 1.**, skip to **Part 3.**

### *Requestor's Full Name*

| **2.a.** | Family Name (Last Name) | SABRA |
|---|---|---|
| **2.b.** | Given Name (First Name) | FLETA |
| **2.c.** | Middle Name | CHRISTINA |

### *Requestor's Mailing Address*

**3.a.** In Care Of Name (if any)

R. Andrew Free

**3.b.** Street Number and Name — P.O. BOX 90568

**3.c.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.d.** City or Town — NASHVILLE

**3.e.** State | TN | **3.f.** ZIP Code | 37209

**3.g.** Province — N/A

**3.h.** Postal Code — N/A

**3.i.** Country

United States

### *Requestor's Contact Information*

**4.** Requestor's Daytime Telephone Number

919345

**5.** Requestor's Mobile Telephone Number (if any)

919345

**6.** Requestor's Email Address (if any)

nasijc.org

### *Requestor's Certification*

By my signature, I consent to pay all costs incurred for search, duplication, and review of documents up to **$25**. (See Form G-639 Instructions for more information.)

**7.a.** Requestor's Signature

**7.b.** Date of Signature (mm/dd/yyyy) | 06/06/2016

## Part 3. Description of Records Requested

**NOTE:** While you are not required to respond to every item in **Part 3.**, failure to provide complete and specific information may delay processing of your request or create an inability for U.S. Citizenship and Immigration Services (USCIS) to locate the records or information requested.

**1. Purpose (Optional:** You are not required to state the purpose of your request. However, providing this information may assist USCIS in locating the records needed to respond to your request.)

### *Full Name of the Subject of Record*

| **2.a.** | Family Name (Last Name) | SABRA |
|---|---|---|
| **2.b.** | Given Name (First Name) | FLETA |
| **2.c.** | Middle Name | CHRISTINA |

## Part 3. Description of Records Requested (continued)

### Other Names Used by the Subject of Record (include nicknames, aliases, and maiden name, if applicable)

**3.a.** Family Name (Last Name): COUSIN

**3.b.** Given Name (First Name): FLETA

**3.c.** Middle Name: CHRISTINA

### Full Name of the Subject of Record at Time of Entry into the United States

**4.a.** Family Name (Last Name): N/A

**4.b.** Given Name (First Name): N/A

**4.c.** Middle Name: N/A

### Other Information About the Subject of Record

**5.** Form I-94 Number Arrival-Departure Record
▶ N / A

**6.** Alien Registration Number (A-Number) (if any)
▶ A-

**7.** Application, Petition, or Request Receipt Number
▶

### Information About Family Members that May Appear on Requested Records

For example, provide the requested information about a spouse or children. If you need extra space to complete this section, use the space provided in **Part 5. Additional Information.**

**Family Member 1**

**8.a.** Family Name (Last Name): SABRA

**8.b.** Given Name (First Name): JIHAD

**8.c.** Middle Name: ABDULLATIF

**9.** Relationship
SPOUSE

**Family Member 2**

**10.a.** Family Name (Last Name):

**10.b.** Given Name (First Name):

**10.c.** Middle Name:

**11.** Relationship

### Parents' Names for the Subject of Record

**Father**

**12.a.** Family Name (Last Name): COUSIN

**12.b.** Given Name (First Name): HORACE

**12.c.** Middle Name: JOSEPH

**Mother**

**13.a.** Family Name (Last Name): COUSIN

**13.b.** Given Name (First Name): VIOLET

**13.c.** Middle Name: LILLY

**13.d.** Maiden Name (if applicable)
TRESENWRITER

## Part 4. Verification of Identity and Subject of Record Consent

**NOTE:** The information requested in **Part 4.** is **REQUIRED.** Complete all applicable **Item Numbers**. In addition, the Subject of Record **MUST** sign **Part 4.** of this request.

### Full Name of the Subject of Record

**1.a.** Family Name (Last Name): SABRA

**1.b.** Given Name (First Name): FLETA

**1.c.** Middle Name: CHRISTINA

## Part 4.  Verification of Identity and Subject of Record (continued)

### Mailing Address for the Subject of Record

**2.a.** In Care Of Name (if any)

FLETA CHRISTINA SABRA

**2.b.** Street Number and Name ▮▮▮▮▮▮▮▮

**2.c.** ☐ Apt. ☒ Ste. ☐ Flr.   102

**2.d.** City or Town   CARY

**2.e.** State  NC   **2.f.** ZIP Code  27518

**2.g.** Province

**2.h.** Postal Code

**2.i.** Country

UNITED STATES

### Other Information for the Subject of Record

**3.** Date of Birth  (mm/dd/yyyy)  ▮▮▮956

**4.** Country of Birth

GUAM

### Contact Information for the Subject of Record

Providing this information is **optional**.

**5.** Daytime Telephone Number

919345▮▮

**6.** Mobile Telephone Number (if any)

919345▮▮

**7.** Email Address (if any)

▮▮▮▮▮▮GMAIL.COM

## Signature and Notarized Affidavit or Declaration of the Subject of Record

Select **only one** box.

**NOTE:** The Subject of Record **MUST** provide a signature in **Item Number 8.a.** Notarized Affidavit of Identity **OR Item Number 8.b.** Sworn Declaration Under Penalty of Perjury.  If the Subject of Record is deceased, read **Item Number 8.c.** and attach proof of death.

**8.a.** ☐ **Notarized Affidavit of Identity** (Do **NOT** sign and date below until the notary public provides instructions to you.)

By my signature, I consent to USCIS releasing the requested records to the requestor (if applicable) named in **Part 2.** I also consent to pay all costs incurred for search, duplication, and review of documents up to **$25** (if filing this request for myself).

_____
Signature of Subject of Record

_____
Date of Signature (mm/dd/yyyy)

Subscribed and sworn to before me on this _____

day of _____ in the year _____.

Daytime Telephone Number _____

_____
Signature of Notary

My Commission Expires on _____

**8.b.** ☒ **Declaration Under Penalty of Perjury**

By my signature, **I** consent to USCIS releasing the requested records to the requestor (if applicable) named in **Part 2.** I also consent to pay all costs incurred for search, duplication, and review of documents up to **$25** (if filing this request for myself).

I certify, swear, or affirm, under penalty of perjury under the laws of the United States of America, that the information in this request is complete, true, and correct.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

_____
Signature of Subject of Record

06/06/2016
_____
Date of Signature (mm/dd/yyyy)

**8.c.** **Deceased Subject of Record** (**NOTE:** You **MUST** attach an obituary, death certificate, or other proof of death.)

## Part 5. Additional Information

If you need extra space to provide any additional information within this request, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with your request or attach a separate sheet of paper. Type or print the name of the Subject of Record and his or her A-Number (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which the information refers; and sign and date each sheet.

**1.a.** Family Name (Last Name)  SABRA

**1.b.** Given Name (First Name)  FLETA

**1.c.** Middle Name  CHRISTINA

**2.** Alien Registration Number (A-Number) (if any)

▶ A- N / A

**3.a.** Page Number

**3.b.** Part Number

**3.c.** Item Number

**3.d.**

**4.a.** Page Number

**4.b.** Part Number

**4.c.** Item Number

**4.d.**

**5.a.** Page Number

**5.b.** Part Number

**5.c.** Item Number

**5.d.**

**6.a.** Page Number

**6.b.** Part Number

**6.c.** Item Number

**6.d.**



# Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 03/31/2018

---

## Part 1. Information About Attorney or Accredited Representative

**1.** USCIS ELIS Account Number *(if any)*
▶ [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

### Name and Address of Attorney or Accredited Representative

**2.a.** Family Name *(Last Name)*  FREE

**2.b.** Given Name *(First Name)*  ANDREW

**2.c.** Middle Name

**3.a.** Street Number and Name  P.O. BOX 90568

**3.b.** Apt. ☐  Ste. ☐  Flr. ☐

**3.c.** City or Town  NASHVILLE

**3.d.** State  TN   **3.e.** ZIP Code  37209

**3.f.** Province  N/A

**3.g.** Postal Code  N/A

**3.h.** Country
United States

**4.** Daytime Telephone Number
844321█

**5.** Fax Number
615829█

**6.** E-Mail Address *(if any)*
█immigrantcivilrights.com

**7.** Mobile Telephone Number *(if any)*
770337█

## Part 2. Notice of Appearance as Attorney or Accredited Representative

This appearance relates to immigration matters before *(Select only one box)*:

**1.a.** ☒ USCIS

**1.b.** List the form numbers
G-639

**2.a.** ☐ ICE

**2.b.** List the specific matter in which appearance is entered

**3.a.** ☐ CBP

**3.b.** List the specific matter in which appearance is entered

I enter my appearance as attorney or accredited representative at the request of:

**4.** Select **only one** box:
☐ Applicant  ☐ Petitioner  ☒ Requestor
☐ Respondent (ICE, CBP)

### Information About Applicant, Petitioner, Requestor, or Respondent

**5.a.** Family Name *(Last Name)*  SABRA

**5.b.** Given Name *(First Name)*  FLETA

**5.c.** Middle Name  CHRISTINA

**6.** Name of Company or Organization *(if applicable)*



## Part 2.  Notice of Appearance as Attorney or Accredited Representative *(continued)*

### *Information About Applicant, Petitioner, Requestor, or Respondent (continued)*

**7.**  USCIS ELIS Account Number  *(if any)*

▶ ☐☐☐☐☐☐☐☐☐☐☐☐

**8.**  Alien Registration Number (A-Number) or Receipt Number

N/A

**9.**  Daytime Telephone Number

919345█

**10.**  Mobile Telephone Number *(if any)*

919345█

**11.**  E-Mail Address *(if any)*

█@GMAIL.COM

### *Mailing Address of Applicant, Petitioner, Requestor, or Respondent*

**NOTE:** Provide the mailing address of the applicant, petitioner, requestor, or respondent.  If the applicant, petitioner, requestor, or respondent has used a safe mailing address on the application, petition, or request being filed with this Form G-28, provide it in these spaces.

**12.a.**  Street Number and Name  █

**12.b.**  Apt. ☐  Ste. ☒  Flr. ☐  102

**12.c.**  City or Town  CARY

**12.d.**  State  NC    **12.e.**  ZIP Code  27518

**12.f.**  Province

**12.g.**  Postal Code

**12.h.**  Country

UNITED STATES

## Part 3.  Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

**1.a.**  ☒  I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia.  *(If you need additional space, use Part 6.)*

Licensing Authority

TN SUPREME COURT

**1.b.**  Bar Number *(if applicable)*

30513

**1.c.**  Name of Law Firm

LAW OFFICE OF ANDREW FREE

**1.d.**  I *(choose one)* ☒ **am not** ☐ **am** subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law.  If you are subject to any orders, explain in the space below.  *(If you need additional space, use Part 6.)*

**2.a.**  ☐  I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals, in accordance with 8 CFR 292.2.  Provide the name of the organization and the expiration date of accreditation.

**2.b.**  Name of Recognized Organization

**2.c.**  Date accreditation expires
*(mm/dd/yyyy)*



**Part 6.  Additional Information**

Use the space below to provide additional information
pertaining to **Part 3., Item Numbers 1.a. - 1.d.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



Exhibit B

May 29, 2020

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re: CBP-2017-055103

Dear Mr. Free:

This is an initial response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on May 5, 2017.  You requested the following information:

All agency records relating to an encounter between your client, Fleta Christina Sabra, Date of Birth: ███████ 1956, on or about September 11, 2015 to September 12, 2015 at the Otay Mesa or San Ysidro ports of entry.  You further specified several types of records such as use of force reports, internal affairs records, etc.

For this release, CBP FOIA has reviewed 105 pages of records and made the following determinations:

- 105 pages of records that are partially released pursuant to Title 5 U.S.C. § 552 (b)(2), (b)(5), (b)(6), (B)(7)(C), (B)(7)(E), and (B)(7)(F).

In addition to these 105 pages, there were three documents deemed withheld in full pursuant to Title 5 U.S.C. § 552 (b)(5), and three additional documents that are already in your possession:

- A 12-page Standard Form 95 Claim for Damage, Injury, or Death, dated September 12, 2017, including fax cover sheet and cover letter.
- A 10-page Complaint for Damages in *Fleta Christina Cousin Sabra v. United States*, 18-cv-2690, filed with the United States District Court for the Southern District of California on November 28, 2018.
- A 2-page Form JS 44 Civil Cover Sheet for the above-referenced complaint.

These three documents that are already in your possession can be produced if necessary.

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Marsha Yee, Assistant United States Attorney.

Sincerely,

*Patrick Howard*

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

June 11, 2020

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re: CBP-2017-055103

Dear Mr. Free:

This is a second response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on May 5, 2017.  You requested the following information:

All agency records relating to an encounter between your client, Fleta Christina Sabra, Date of Birth: ████████ 1956, on or about September 11, 2015 to September 12, 2015 at the Otay Mesa or San Ysidro ports of entry.  You further specified several types of records such as use of force reports, internal affairs records, etc.

For this release, CBP FOIA has reviewed 89 pages of records and made the following determinations:

-   89 pages of records that are partially released pursuant to Title 5 U.S.C. § 552 (b)(6), (B)(7)(C), (B)(7)(E), and (B)(7)(F).

In addition to these 89 pages, CBP FOIA evaluated 13,794 pages of e-mail records and made the following determinations:

-   13,740 pages were non-responsive to the request.
-   54 pages of records were determined responsive, and partially released pursuant to Title 5 U.S.C. § 552 (b)(6), (B)(7)(C), (B)(7)(E), and (B)(7)(F).

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Marsha Yee, Assistant United States Attorney.

Sincerely,

*Patrick Howard*

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

90 K Street NE
MS 1181
Washington, DC 20229

August 7, 2020

 **U.S. Customs and Border Protection**

Mr. R. Andrew Free
1390 Newton Ave. SE
Atlanta, GA 30316

Re: CBP-2017-055103

Dear Mr. Free:

This is the fourth response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on May 5, 2017.  You requested the following information:

All agency records relating to an encounter between your client, Fleta Christina Sabra, Date of Birth: ▮▮▮▮▮ 1956, on or about September 11, 2015 to September 12, 2015 at the Otay Mesa or San Ysidro ports of entry.  You further specified several types of records such as use of force reports, internal affairs records, etc.

Our fourth partial release involved the review of one audio file.  A total of  one audio file approximately ten minutes and one second is partially releasable, pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E).  Enclosed is one audio file with certain information withheld.

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Marsha Yee, Assistant United States Attorney.

Sincerely,



Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

90 K Street NE
MS 1181
Washington, DC 20229



**U.S. Customs and Border Protection**

September 23, 2020

Mr. R. Andrew Free
1390 Newton Ave., SE
Atlanta, GA 30316-2017

Re: CBP-2017-055103

Dear Mr. Free:

This is the fifth and final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on May 5, 2017.  You requested the following information:

All agency records relating to an encounter between your client, Fleta Christina Sabra, Date of Birth: ███████ 1956, on or about September 11, 2015 to September 12, 2015 at the Otay Mesa or San Ysidro ports of entry.  You further specified several types of records such as use of force reports, internal affairs records, etc.

Our final release involved the review of seven video files (with audio) approximately 102 minutes and 14 seconds in total length.  A total of  seven video files (approximately 102 minutes and 14 seconds) are partially releasable, pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E).  Enclosed are seven video files with certain information withheld.

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Marsha Yee, Assistant United States Attorney.

Sincerely,


Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

November 12, 2020

R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re: CBP-2017-055103

Dear Mr. Free:

This is a follow up response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) on May 5, 2017. You requested the following information:

All agency records relating to an encounter between your client, Fleta Christina Sabra, Date of Birth: ███████ 1956, on or about September 11, 2015 to September 12, 2015 at the Otay Mesa or San Ysidro ports of entry. You further specified several types of records such as use of force reports, internal affairs records, etc.

For this release, CBP FOIA has reviewed 147 pages of records belonging to other passengers in the car and made the following determinations:

-    147 pages of records that are partially released pursuant to Title 5 U.S.C. § 552 (b)(3),(b)(6), (B)(7)(C), and (B)(7)(E).

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Joseph Carilli, Assistant United States Attorney.

Sincerely,

*Patrick Howard*

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office