**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FLETA CHRISTINA C.  SABRA,<br>　　　　　Plaintiff,<br>　　　v.<br>UNITED STATES CUSTOMS AND<br>BORDER PROTECTION,<br>　　　　　Defendant. | Civil Action No. 20-681 (CKK) |

**MEMORANDUM OPINION**
(January 31, 2023)

This lawsuit arises from a Freedom of Information Act ("FOIA") request made by Plaintiff Fleta Christina C. Sabra ("Plaintiff") to Defendant United States Customs and Border Protection ("CBP" or "Defendant").  Plaintiff sought records regarding an encounter with CBP agents at a port of entry in California in September 2015 and CBP's subsequent investigation thereof.

Before the Court is Defendant's [35] Renewed Motion for Summary Judgment.  Plaintiff opposes Defendant's motion, but has not filed a cross-motion for summary judgment.  Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that CBP has carried its burden of demonstrating that it has conducted an adequate search for records responsive to Plaintiff's FOIA request and withheld and redacted certain records appropriately.  The

---

[1] The Court's consideration has focused on the following:
- Defendant's Motion for Summary Judgment, ECF No. 24 ("Def.'s Mot.");
- Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 28 ("Pl.'s Opp'n");
- Defendant's Reply in Support of Defendant's Motion for Summary Judgment, ECF No. 29 ("Def.'s Reply");
- Defendant's Renewed Motion for Summary Judgment, ECF No. 35 ("Def.'s Renewed Mot.");
- Plaintiff's Response in Opposition to Defendant's Renewed Motion for Summary Judgment, ECF No. 37 ("Pl.'s Opp'n to Def.'s Renewed Mot."); and
- Defendant's Reply Memorandum in Support of Defendant's Renewed Motion for Summary Judgment, ECF No. 39 ("Def.'s Reply re: Renewed Mot.").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  See LCvR 7(f).

Court shall therefore **GRANT** Defendant's Renewed Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff alleges that in September 2015, she was unlawfully detained and physically assaulted by CBP agents at the Otay Mesa or San Ysidro port of entry in Southern California. Compl. ¶¶ 2–3, ECF No. 1. On May 5, 2017, Plaintiff submitted to Defendant a FOIA request seeking:

> All agency records, including, but not limited to, video, database entries, photographs, communications (including emails, letters, faxes, phone logs, and text messages), memoranda, investigative reports, and other things relating to the encounter between [Plaintiff] and U.S. Customs and Border Protection officials on or about September 11, 2015 [or] September 12, 2015 at the Otay Mesa OR San Isidro ports-of-entry. Please search specifically for use of force reports, internal affairs complaints and responses, internal investigations, professional responsibility investigations and interviews, video and photographic evidence gathered in response to [Plaintiff's] complaints, and all other records in the possession, custody, or control of CBP… [Plaintiff] filed a complaint with [the Department of Homeland Security's Office for Civil Rights and Civil Liberties] on September 23, 2015, and was interviewed by officials she believes worked for CBP regarding that complaint on or about December 21, 2015 in North Carolina.

*Id.* ¶ 75. Plaintiff requested expedited processing of her FOIA request, *id.* ¶ 9, which CBP denied, *see* Pl.'s 6/9/20 Status Rep. at 5, ECF No. 9.[2]

CBP's search yielded 14,170 pages of records, three audio files, and eight video files "potentially responsive" to Plaintiff's FOIA request. *See* Def.'s Mot. Ex 1, Declaration of Patrick A. Howard ("Howard Decl.") ¶ 8, ECF No. 24-3. CBP determined that 430 pages and all audio and video files were responsive to Plaintiff's request. *Id.* Of those responsive materials, twenty-four pages were determined to be already in Plaintiff's possession; eleven pages were withheld in full

---

[2] Plaintiff previously filed a [7] Motion for Judgment on the Pleadings on the basis that CBP failed to timely adjudicate her request for expedited processing and failed to make records promptly available to her. *See* Pl.'s Mot. for J. on Pleadings, ECF No. 7. The Court denied Plaintiff's Motion. *See* Order, ECF No. 22; Mem. Op., ECF No. 23.

based on FOIA Exemption 5; and 395 pages, as well as the audio and video files, were released with partial redactions based on FOIA Exemptions 6, 7(C), 7(E), and 7(F).  *Id.*

CBP filed its first [24] Motion for Summary Judgment in March 2021.  In support of that Motion, CBP submitted two Declarations of Patrick A. Howard, a Branch Chief in the FOIA Division, Privacy and Diversity Office, Office of the Commissioner for CBP, and a *Vaughn* Index.  *See* Howard Decl.; Def.'s Reply Ex. A, [Supplemental] Declaration of Patrick A. Howard ("Suppl. Howard Decl."), ECF No. 29-1; Def.'s Mot. Ex. 1, *Vaughn* Index, ECF No. 24-3.  The Court denied without prejudice CBP's [24] Motion for Summary Judgment, finding that CBP had not satisfied its burden of demonstrating that it conducted an adequate search for records responsive to Plaintiff's FOIA request.  *See* Mem. Op., ECF No. 32.  The Court therefore declined to address the remaining issues pertaining to withholdings and redactions.  *See id.* at 1–2, 10.

CBP filed the present [35] Renewed Motion for Summary Judgment in June 2022.  In it, CBP incorporates its arguments from the prior [24] Motion regarding withholdings and redactions, and the [35] Motion addresses only the adequacy of CBP's search for responsive records.  *See* Def.'s Renewed Mot. at 1.  In support of the [35] Motion, CBP submitted a second supplemental Declaration of Patrick A. Howard.  *See* Def.'s Renewed Mot. Ex. A, ("Second Suppl. Howard Decl."), ECF No. 35-1.  This Motion is now fully briefed and ripe for resolution.

## II.  LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)

3

(citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material."  *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261–62 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S. Ct. at 1262 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (PLF) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (PLF)).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (RC) (citation omitted).  The burden is on the agency to justify its response to the plaintiff's request.  5 U.S.C. § 552(a)(4)(B).  "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  "Uncontradicted, plausible affidavits showing reasonable specificity and

4

a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).

### III. DISCUSSION

Defendant CBP seeks summary judgment as to the adequacy of its search and claimed exemptions. Plaintiff opposes Defendant's motion, but has not filed any cross-motion for summary judgment. For the reasons below, the Court concludes that CBP has carried its burden of demonstrating that it has conducted an adequate search for records responsive to Plaintiff's FOIA request as well as withheld and redacted certain records appropriately. Accordingly, the Court shall grant Defendant's motion for summary judgment.

### A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted). "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 326 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also DiBacco v. U.S Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (same). Summary judgment must be denied "if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials." *DiBacco*, 795 F.3d at 188 (internal citation and quotation marks omitted).

The Court denied CBP's first [24] Motion for Summary Judgment on the grounds that CBP's supporting declarations failed to explain whether all files "likely to contain responsive materials" were searched, as is required. *See* Mem. Op., ECF No. 32, at 6 (quoting *Valencia-*

*Lucena*, 180 F.3d at 325).  The Court's decision pointed to extensive case law, including one case in which the court noted that the agency's statements "fail[ed] to invoke the magic words concerning the adequacy of the search—namely the assertion that [the agency] searched *all* locations likely to contain responsive records," which precluded summary judgment for the defendant.  *Id.* at 6–7 (quoting *New Orleans Workers' Center for Racial Justice v. USCIS*, 373 F. Supp. 3d 16, 37 (D.D.C. 2019) (RBW) (internal quotation omitted)).  In light of this deficiency, the Court also found problematic Plaintiff's allegations that CBP did not consider "obvious leads" for additional email custodians.  *Id.* at 7–8 (quoting Pl.'s Opp'n at 6).  The Court ultimately found that Defendant did not satisfy its burden of demonstrating that it conducted an adequate search for records and required that CBP either provide additional information about its search or conduct additional searches.  *Id.* at 1.  Defendant took the former approach when filing its Renewed Motion for Summary Judgment; with this additional information, the Court now considers the adequateness of CBP's search.

### 1.  Defendant's Search of All Locations Likely to Contain Responsive Records

In its Motion, CBP states that it "reevaluated its search" for responsive records.  Def.'s Renewed Mot. at 3.  Mr. Howard states in his newest declaration that upon Plaintiff's request, "CBP identified all offices that would have records related to (1) a traveler encounter at the Otay Mesa or San Ysidro ports of entry and (2) the investigation of a complaint alleging misconduct in connection with such an encounter."  Second Suppl. Howard Decl. ¶ 8.  According to Mr. Howard, the offices "likely to have such records were the CBP's Office Professional Responsibility, Office of Field Operations, U.S. Border Patrol, Office of Information Technology, and Office of Chief Counsel."  *Id.*  Critically, he states that "[a]ll agency files and records likely to contain responsive records were searched by [those] CBP offices."  *Id.*  Mr. Howard then explains the types of searches conducted and what the searches yielded.  *Id.* (a)–(g).

6

Mr. Howard's declaration is "accorded a presumption of good faith." *SafeCard Servs., Inc., v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Therefore, as the agency has provided—in the form of Mr. Howard's declaration—a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials… were searched," *Oglesby*, 920 F.2d at 68, the Court finds that CBP has satisfactorily demonstrated that they conducted an adequate search for responsive records.

### 2.  Defendant's Failure to Search Certain Emails

The Court is not persuaded by Plaintiff's argument that CBP's search was inadequate because they failed to search the emails of certain individuals. In her opposition to Defendant's first Motion for Summary Judgment, Plaintiff flagged that Mr. Howard "fails to explain why CBP did not conduct an iterative search of the emails from other CBP officials sent to or received from the five employees listed in Sabra's original complaint." Pl.'s Opp'n at 6. Plaintiff continues to argue that CBP should have searched the emails of individuals included on a September 22, 2015 email containing information about Plaintiff's complaint sent from Megan Mack, Department of Homeland Security's Officer for Civil Rights and Liberties, to Kevin McAleenan, the then-Deputy CBP Commissioner, and others. Pl.'s Opp'n to Def.'s Renewed Mot. at 3–4. Plaintiff contends that this September 22 email was an "obvious lead" that CBP intentionally overlooked. *Id.* at 6.

Defendant claims that "it was unnecessary to search the emails of other individuals on the affected email." Def.'s Renewed Mot. at 4 (citing Second Suppl. Howard Decl. ¶ 9). Mr. Howard states that "[b]ecause CBP has searched all files likely to contain responsive materials, including the emails of all five CBP officials identified as potential witnesses to the encounter between Plaintiff and CBP, it was entirely reasonable for the Agency not to needlessly search the emails of all other individuals appearing on an electronic mail message which included the five CBP officials." Second Suppl. Howard Decl. ¶ 9.

7

The Court now addresses Plaintiff's various challenges related to this September 22 email. First, the fact that CBP failed to find the September 22 email itself in its search, *see* Pl.'s Opp'n to Def.'s Renewed Mot. at 5 ("the Mack-McAleenan Email chain itself was not produced or even referenced by CBP in its batch of responsive emails"), does not make the search necessarily inadequate. "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (citations omitted). "Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315 (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). Here, as explained above and below, CBP has provided information via affidavit regarding its search methods that the Court has found to be reasonable and appropriate.

Second, Plaintiff's speculation that other responsive documents may exist that were not uncovered by Defendant's allegedly inadequate search also does not make that search necessarily inadequate. In the September 22 email, Mack wrote: "We are logging the complaint and forwarding to the Inspector General per our usual procedures. If the I[nspector] G[eneral] doesn't retain the investigation and I[nternal] A[ffairs] investigates, we would like to investigate jointly with IA." Pl.'s Opp'n to Def.'s Renewed Mot., Ex. 4. Plaintiff uses the content of this email to pose a series of questions about what happened next—e.g., "Did Mack follow up with McAleenan to inquire about the status of the investigation? Did the Inspector General formally decline an investigation?"—insinuating that other responsive records may exist answering such questions. Pl.'s Opp'n to Def.'s Renewed Mot. at 5. However, as Defendant writes, "[the September 22 email does not suggest that additional responsive records exist within CBP's possession." Def.'s Reply re: Renewed Mot. at 2–3. Case law is clear that "[m]ere speculation that as yet uncovered

documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 1201; *see also Wilbur*, 355 F.3d at 678.  Plaintiff has produced no evidence indicating that other documents do in fact exist, and speculation is not enough to cast Defendant' otherwise-reasonable search into question.

Plaintiff also appears to attack CBP's searches as inadequate because "CBP has limited its email search to only six terms which do not include the unique identifier case numbers CBP and OIG may have assigned to [Plaintiff's] request."  Pl.'s Opp'n to Def.'s Renewed Mot. at 7. However, a FOIA petitioner cannot dictate the search terms for their FOIA request.  *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (RDB). Rather, "[a]gencies generally have discretion in crafting a list of search terms as long as they are reasonably tailored to uncover documents responsive to the FOIA request."  *Tushnet v. ICE*, 246 F. Supp. 3d 422, 434 (D.D.C. 2017) (CRC) (quotation omitted).  "Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior."  *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) (BAH); *see also Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (KBJ) ("Where the search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search.");  *Johnson v. Exec. Office for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micromanage the executive branch.").  Here, the search terms used by CBP's Office of Information Technology ("OIT") were: Sabra, Cousinsabra, Cousin-Sabra, Syria, Syrian, and Syrians.  Second Suppl. Howard Decl. ¶ 8(a). Plaintiff's name is Fleta Christina Cousin Sabra, and her Complaint "relat[es] to the experiences of a U.S. citizen, a U.S. lawful permanent resident ('LPR'), and a family of Syrian refugees at the

U.S.-Mexico border in late 2015."  Compl. ¶ 1.  The Court cannot say that CBP's search terms were unreasonable.

Plaintiff's critique that OIT's email search included only five individuals also does not make CBP's search inadequate.  An adequate search may be limited to the places most likely to contain responsive documents, *Schrecker v. United States Dep't of Justice*, 217 F. Supp. 2d 29, 34–35 (D.D.C. 2002) (RCL), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003), and Defendant CBP conducted searches of "[a]ll agency files and records likely to contain responsive records," Def.'s Renewed Mot. at 3.  Furthermore, CBP conducted searches beyond those five individuals' emails; its search engaged four other CBP offices and spanned various databases and systems.  *See* Second Suppl. Howard Decl. ¶ 8.  This is not a case where the agency searched only one record system despite its knowledge that other components potentially possessed responsive records.  *Cf. Valencia–Lucena*, 180 F.3d at 327 ("[The agency's] failure to search the center it had identified as a likely place where the requested documents might be located clearly raises a genuine issue of material fact as to the adequacy of [the agency's] search.").  It is simply the case that with respect to OIT's email account search, they searched only the "accounts of five CBP employees identified as potential witnesses to the encounter between Plaintiff and CBP."  Second Suppl. Howard Decl. ¶ 8(a).

Finally, Defendant provides additional responses as to each of the individuals included on the September 22 email.  Plaintiff identifies four people and/or offices represented on the email: Department of Homeland Security Office for Civil Rights and Civil Liberties; Office of the Inspector General; CBP Internal Affairs; Deputy CBP Commissioner; and one other redacted individual.  *See* Pl.'s Opp'n to Def.'s Renewed Mot. at 3–5.  To begin, Mack, the email's sender, was an Officer for Civil Rights and Civil Liberties at Department of Homeland Security.  As Defendant explains, the Office of Civil Rights and Civil Liberties exists outside of CBP and has its own record keeping system; "CBP does not have custody or control of records maintained by that

Office" and Plaintiff would need to submit a separate FOIA request to that Office to the extent Plaintiff wants a search of Mack's emails.  Def.'s Reply re: Renewed Mot. at 3.  Similarly, to the extent Plaintiff wants a search of emails within the Inspector General's Office because the September 22 email was "forward[ed] to the Inspector General," Pl.'s Opp'n to Def.'s Renewed Mot., Ex. 4, Plaintiff would need to submit a separate FOIA request to that Office, as CBP also does not have control over records belonging to that Office, *see* Def.'s Reply re: Renewed Mot. at 3.  As for CBP Internal Affairs—included on the email because Mack copied Matt Klein, a CBP Internal Affairs investigator—Defendant explains that they did in fact search that office, now known as the "Office of Professional Responsibility."[3]  *Id.* at 4.  Per Mr. Howard's declaration, the Office of Professional Responsibility conducted a search of its Joint Integrity Case Management System, which located responsive documents.  Second Suppl. Howard Decl. ¶ 8(e).  Finally, Defendant contends that as for the Deputy CBP Commissioner, then McAleenan, "there [wa]s no need to search Mr. McAleenan's email as a recipient of this notification e-mail, as it did not ask for his involvement or action as a Deputy Commissioner of CBP at that time."  Def.'s Reply re: Renewed Mot. at 3.

Altogether the Court finds that Defendant's failure to search the specific emails of five individuals does not negate the reasonableness of its search in light of the methods used to carry out the search.

*         *         *

In sum, the Court finds that when considering the overall "circumstances of the case," *Davis v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006), CBP's FOIA search was adequate.

---

[3] *Report on Internal Investigations and Employee Accountability*, U.S. Customs and Border Protection, https://www.cbp.gov/sites/default/files/assets/documents/2022-May/fy21-cbp-opr-internal-investigation-accountability_1.pdf, at 9 (last visited Jan. 23, 2023) ("… the CBP Office of Professional Responsibility (OPR), previously known as the Office of Internal Affairs…").

Plaintiff's objections pick at CBP's email searches and rest on speculation, but "[t]here is no requirement that an agency search every record system" or overturn every proverbial stone. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Instead, an agency's search is ultimately judged by "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  *SafeCard Servs., Inc.*, 926 F.2d at 1201.  Here, CBP has demonstrated that its FOIA search was comprehensive and multi-faceted in a manner that was "reasonably calculated" to retrieve documents responsive to Plaintiff's FOIA request.

### B.  Withholdings and Redactions

Having found CBP's search to be adequate, the Court now turns to CBP's withholdings and redactions.  CBP withheld information under FOIA Exemptions 5, 6, 7(C), 7(E), and 7(F).  In its Reply in Support of Renewed Motion for Summary Judgment, Defendant points out that Plaintiff fails to address the issue of withholdings and redactions entirely.  *See* Def.'s Reply re: Renewed Mot. at 6.  While Defendant "incorporate[d] and adopt[ed] [] the arguments sustaining its withholdings and redactions… as asserted in its previously filed Motion for Summary Judgment" in its Renewed Motion, Def.'s Renewed Mot. at 5, Plaintiff did not do the same, making no reference to her previous briefing and instead staking her entire opposition on the idea that Defendant's search was inadequate.

However, the Court does recognize the contentions raised in Plaintiff's Opposition to Defendant's *first* Motion for Summary Judgment.  There, Plaintiff disputed that CBP's withholdings were factually or legally justified, *see* ECF No. 28-1 at 1, but provided little argumentation.  Plaintiff stated that "[t]he Court cannot conduct its… inquiry into the propriety of the agency's withholdings, and balance the public interest in disclosure of records, if it lacks the entire universe of documents"—lacking because, according to Plaintiff, CBP did not conduct an

adequate search.  Pl's Opp'n at 7–8.  Plaintiff then argued that "[l]aw enforcement officers who verbally abuse and physically mistreat United States Citizens at ports of entry are not, *ipso facto*, entitled to secrecy.  The allegations in this case present a strong public interest in determining what CBP is up to, especially given the demonstrable failure of the agency to police itself."  Pl.'s Opp'n at 8.

The Court addresses the propriety of CBP's withholdings in turn.

### 1.  FOIA Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  It applies to materials that would be privileged in the civil discovery context, such as materials protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In order to "justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996).  In this case, the CBP claims that three records, totaling eleven pages, related to Plaintiff's Federal Tort Claims Act ("FTCA") claim were withheld because they are attorney work product.

The attorney work product doctrine shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant,… or agent)."  Fed. R. Civ. P. 26(b)(3); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). The work product doctrine protects both deliberative materials such as mental impressions, conclusions, opinions, and legal theories and factual materials prepared in anticipation of litigation.  *Tax Analysts*, 117 F.3d at 620.  CBP's

*Vaughn* Index states that the three withheld records were "a memorandum conveying Agency counsel's legal advice and analysis to CBP's Director of the National Finance Center, concerning Plaintiff's FTCA claim against CBP," an "email communication between the Assistant U.S. Attorney and Agency counsel concerning the related FTCA litigation of Plaintiff's claim," and "the litigation hold notice generated by the FTCA litigation of Plaintiff's claim." *Vaughn* Index at 1, ECF No. 24-3.  In his declaration, Mr. Howard states that the memorandum included "assessments of the merits of Plaintiff's FTCA claim against the Agency, incorporating both factual materials and legal analysis."  Howard Decl. ¶ 11.  Such records plainly fall within the attorney work product privilege, making them exempt from disclosure under 5 U.S.C. § 552(b)(5).

Plaintiff has failed to present any evidence contradicting Mr. Howard's affidavit or coloring the agency's Exemption 5 withholdings in bad faith.  Accordingly, the Court finds that the CBP's withholding of material pursuant to FOIA Exemption 5 was proper.

### 2.  FOIA Exemption 6

Exemption 6 protects information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted). "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained."  *Concepcion v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (RMU) (citations and internal quotation marks omitted). In considering whether an agency has properly invoked Exemption 6, courts must balance the privacy interest in nondisclosure against the public interest in the release of the information. *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999).  "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

Mr. Howard explains that Exemption 6 was applied to certain "inspection records that document specific border inspections of travelers." Howard Decl. ¶ 14. Within these records, the exemption was applied to "(1) personally identifiable information of government employees, including information that could identify CBP personnel involved in law enforcement functions; (2) information regarding the subjects of records; and (3) information regarding individuals mentioned in records (e.g., co-travelers or other individuals identified or mentioned by the subject of a record)." *Id.*

As for employees, such personally identifiable information included "names, signatures, photographs or images, contact information, telephone numbers, email addresses, physical addresses, physical descriptions, badge numbers, and identification numbers and other unique identifiers." *Id.* ¶ 15. Mr. Howard states that "there is no public interest in the disclosure of [such personally identifiable] information." *Id.* As for members of the public, information was withheld that "if released, could impair the personal privacy interests of those members of the public." *Id.* ¶ 16. Mr. Howard continues that "[f]ederal officials may not disclose personal information may not disclose personal information to a third party, except in accordance with the Privacy Act and consistent with the routine uses identified in the System of Records Notices." *Id.* Plaintiff submitted authorization via Privacy Act Waivers for the records of her traveling companions at the port of entry, but not other third party individuals; accordingly, CBP only provided unredacted records with respect to Plaintiff and her traveling companions, but not that of other third party individuals, as they "maintain privacy interests in their own information." *Id.* CBP's *Vaughn* Index provides additional detail about these redactions. *See Vaughn* Index, ECF No. 24-3.

The Court finds that the redacted records fall within FOIA Exemption 6, and Plaintiff has

failed to present any evidence raising doubt or contradiction.  Plaintiff makes only broad arguments including that "law enforcement officers… are not, *ipso facto*, entitled to secrecy" and that there is "a strong public interest in determining what CBP is up to."  Pl.'s Opp'n at 8.  This does not justify revealing private information of government employees and certainly not that of third party individuals.  The Court therefore finds CBP's withholding of material pursuant to FOIA Exemption 6 to be proper.

### 3.  FOIA Exemption 7 Threshold Inquiry

Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes" to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption.  *See* 5 U.S.C. § 552(b)(7).  Judicial review of an agency's withholding under FOIA Exemption 7 "requires a two-part inquiry": first, whether the relevant information was in fact compiled for law enforcement purposes, and second, whether it fits one of the (A)–(F) standards.  *CBP v. Abramson*, 456 U.S. 615, 622 (1982).

Regarding the first prong, to show that the disputed documents were "compiled for law enforcement purposes," the agency need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *see also Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987).  Here, CBP writes that it "is without a doubt a law-enforcement agency," Def.'s Mot. at 11, and contends that the documents withheld under Exemption 7 were "compiled for law enforcement purposes in that the information is created and used by CBP in its mission to secure the border of the United States," Howard Decl. ¶¶ 19, 26; *see*

*also id.* ¶ 21;[4] therefore, it is "entitled to deference in its determination that the records were compiled for a law enforcement purpose," Def.'s Mot. at 11 (citing *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014) (BAH)).

The documents withheld under Exemption 7 qualify as "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  With this threshold matter addressed, the Court now turns to the second prong and discusses redactions made pursuant to subsections of Exemption 7.

### 4.  FOIA Exemption 7(C)

Exemption 7(C) protects records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure.  *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006) (RCL). Once an agency has shown a logical connection between the withheld information and this exemption, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined" in *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).  *Id.*

Under the *Favish* test, a plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the [withheld] information is likely to advance that interest."  *Favish*, 541 U.S. at 172.  "It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't*

---

[4] The Howard Declaration expounds further upon these documents compiled for law enforcement purposes, including details about types of record-keeping and information contained within such records.  *See* Howard Decl. ¶¶ 21–38.

*of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).  When the requester advances revealing government misconduct as the relevant public interest, the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Favish*, 541 U.S. at 174.  For the public interest to prevail, the requester must provide "compelling evidence that the agency is engaged in illegal activity," *SafeCard Servs., Inc.*, 926 F.2d at 1205–06, far "more than a bare suspicion" of official misconduct, *Favish*, 541 U.S. at 174.

Here, Mr. Howard states that Exemption 7(C) was "applied to protect the personal privacy interests of CBP personnel, travelers whom CBP personnel have encountered at ports of entry, and other members of the public."  Howard Decl. ¶ 22.  More specifically, they withheld "(1) personally identifiable information of government employees, including information that could identify CBP personnel involved in law enforcement functions; (2) information regarding the subjects of records; and (3) information regarding individuals mentioned in records (e.g., co-travelers or other individuals identified or mentioned by the subject of a record).  *Id.*  Regarding government employees, Mr. Howard explains that this exemption is designed to "protect… [them] from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identity."  *Id.* ¶ 20.  As for third party individuals, Mr. Howard writes that they "have a protectable privacy interest in their identities that would be compromised by the release of this information."  *Id.* ¶ 21.

The Court finds that there are significant private interests at stake here.  As for the information of government employees, it is well settled that law enforcement personnel have a substantial interest in anonymity.  *See Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 216–17 (D.D.C. 2018) (RDM) (discussing Exemption 7(C) and noting that "government investigators and employees 'have a legitimate interest in preserving the secrecy of matters that

18

conceivably could subject them to annoyance or harassment in either their official or private lives'") (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)); *see also Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 299 (D.D.C. 2011) (RJL).  Next, as a general matter, the identification of a third party individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."  *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987) (Richey, J.).  Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names… of third parties," as such information is not probative of an agency's performance of its statutory responsibilities.  *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000); *see also Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013) (RMC) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)).

On the other side of the balancing equation, Plaintiff avers that "[t]he allegations in this case present a strong public interest in determining what CBP is up to."  Pl.'s Opp'n at 8.  The main support Plaintiff offers for her allegations of government misconduct is the statements in her complaint regarding how CBP employees allegedly injured her mentally and physically.  *See* Compl. ¶¶ 26–66, ECF No. 1.  In response to Defendant's first Motion for Summary Judgment, Plaintiff states that "[p]laintiff emerged from CBP alleging serious injuries, including to her wrists, foot, and her eye—injuries that required referrals to specialists and ultimately surgery."  Pl.'s Opp'n at 8.  In response to Defendant's Renewed Motion for Summary Judgment, Plaintiff includes a photograph of bruises on her wrists she alleges were sustained during her encounter with CBP.  Pl.'s Opp'n to Def.'s Renewed Mot. at 4; *id.* Ex. 3.

However, because "[a]llegations of government misconduct are easy to allege and hard to disprove,… courts must insist on a meaningful evidentiary showing" before weighing the competing interests.  *Favish*, 541 U.S. at 175 (citation internal quotation marks and citation

omitted).  "A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)."  *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 188 (D.C. Cir. 1994); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) ("bare and undeveloped allegations" of agency impropriety do not suffice).  Absent production of "evidence that would warrant a belief by a reasonable person that… Government impropriety might have occurred," *Sussman*, 494 F.3d at 1115 (quoting *Favish*, 541 U.S. at 174), a plaintiff cannot demonstrate the existence of a public interest weighing in favor of releasing personal information. The Court finds that Plaintiff has not met this burden here, as Plaintiff does not produce any evidence, let alone compelling evidence; her argument rests solely on the allegations in her Complaint and a photograph included in recent briefing.

Therefore, the Court finds that no public interest outweighs the privacy interests of the individuals in the redacted records, and therefore CBP's reliance on FOIA Exemption 7(C) was justified.

### 5.  FOIA Exemption 7(E)

Finally, Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information… would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Per the United States Court of Appeals for the District of Columbia Circuit, this "exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a

reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Exemption 7(E) sets a relatively low bar for the agency to justify withholding: "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* at 1194 (internal quotation marks and alterations omitted).

CBP invoked Exemption 7(E) to protect "four categories of information: (1) information that would reveal the subjects of specific law enforcement interest; (2) information regarding specific law enforcement techniques and operational vulnerabilities; (3) information that, in the aggregate, reveals trends and/or specific law enforcement capabilities and techniques employed in particular operational locations, which can reveal the likelihood of CBP utilizing certain inspection techniques in specific operational locations; and (4) computer codes and other information that can expose CBP computer systems to a risk of unauthorized access or navigation." Def.'s Renewed Mot. at 14 (citing Howard Decl. ¶¶ 29–35). Mr. Howard states that these records, if disclosed, "could reasonably be expected to risk circumvention of the law" because, among numerous other reasons he describes, the information within them would "educat[e] [members of the public] as to the investigative techniques used and thereby assist[] them to devise methods to evade detection and apprehension"; "create[] a basis for comparison of the handling of different inspections," which "can be used to clarify or predict a CBP officer's behavior in specific circumstances"; and "enable individuals to thwart efforts to secure the border and enforce immigration and customs laws." Howard Decl. ¶¶ 29, 31, 33–34.

The Court finds that Mr. Howard's statements logically explain how this information could help others circumvent the law, which suffices to justify invocation of Exemption 7(E).

### 6.  FOIA Exemption 7(F)

Exemption 7(F) protects from mandatory disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  In general, this exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester. *See Durham v. U.S. Dep't of Justice*, 829 F. Supp. 428, 434 (D.D.C. 1993) (CRR); *Pub. Emps. for Env'tal Resp. (Peer), Rocky Mountain Chapter v. U.S. E.P.A.*, 978 F. Supp. 955, 961 (D. Colo. 1997) (citing cases).  Moreover, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices."  *Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014).  In reviewing claims under exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm.  *Albuquerque Pub. Co. v. U.S. Dep't. of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989) (Pratt, J.).  "Within limits, courts defer to the agency's assessment of danger."  *Pinson v. Dep't of Justice*, 236 F. Supp. 3d 338, 368 (D.D.C. 2017) (RC) (citation omitted).

Here, CBP withheld "information relating to claims of asylum" under Exemption 7(F) after concluding that "[r]eleasing information about an asylum claim or asylum seeker… would put that individual… at risk."  Howard Decl. ¶ 38.  "Because asylum seekers are, by definition, fleeing persecution, release of information relating to an asylum claim can be reasonably expected to endanger the life or physical safety of the individual making the asylum claim and others who may be impacted by the release of information related to the claim, including the fact that such a claim was made."  *Id.*

The Court finds that CBP has sufficiently demonstrated that the information withheld could

be reasonably expected to endanger the life or physical safety of specific asylum seekers, or others impacted by the release of such information, and therefore, CBP properly redacted information under FOIA Exemption 7(F).  *See Schotz v. Samuels*, 72 F. Supp. 3d 81, 89 (D.D.C. 2014) (Exemption 7(F) "affords broad protection to the identities of individuals mentioned in law enforcement files…, including any individual reasonably at risk of harm").

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's [35] Renewed Motion for Summary Judgment.  This case shall be dismissed with prejudice.  An appropriate Order accompanies this Memorandum Opinion.

                                           /s/
                                   COLLEEN KOLLAR-KOTELLY
                                   United States District Judge