## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| FLETA CHRISTINA C. SABRA, <br>        Plaintiff, <br><br>   v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, <br>        Defendants. |

Case No. 20-681 (CKK)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY FEES

**INTRODUCTION**

This matter arose before this Court only after Defendant's consistent failure to abide by Congressionally mandated requirements and deadlines for FOIA. Nearly three years after filing her initial request, Plaintiff was forced to litigate her request before this Court before Defendant finally discharged its obligations under FOIA.

After failing to address Plaintiff's 2017 FOIA request, the instant suit and this Court's order prompted Customs and Border Protection (CBP) to make a determination on Plaintiff's request and begin searching for and producing records. The subsequent search yielded over 14,000 pages of potentially responsive records, 3 audio files, and 8 video files. Of these, Defendant determined that 430 pages and all audio and video files were responsive to Plaintiff's FOIA request. *See* ECF No. 32 (Memorandum Opinion Denying Summary Judgment) at 2. After briefing, this Court denied Defendant's first motion for summary judgment for failing to conduct an adequate search. *See id*.

For purposes of this Motion, Plaintiff seeks attorney fees and costs as it relates to Plaintiff's original counsel, Mr. Andrew Free, who worked on the case since its inception up through November 12, 2020, as well as work done in November 2025 and early 2026. *See* Exhibit A, Declaration of Andrew Free. Undersigned counsel also seeks fees related to the instant motion and any subsequent replies. *See* Exhibit B, Melo Declaration.

**ARGUMENT**

FOIA allows for attorney fees where a plaintiff has "substantially prevailed" through judicial order or the agency's unilateral change in position. *See* 5 U.S.C. §

552(a)(4)(E)(i)-(ii). To seek attorney fees, FOIA requires a litigant to demonstrate that the lawsuit was reasonably necessary and that the litigation substantially caused the requested records to be released. *See Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d, 225, 231 (D.D.C. 2012) (quoting *Burka v. HHS*, 142 F.3d 1286, 1288 (D.C. Cir. 1998)). "Congress sought to encourage meritorious FOIA litigation by making any complainant who substantially prevails eligible to recover reasonable attorney's fees." *National Security Counselors v. CIA*, 811 F.3d 22, 24 (D.C. Cir. 2016). "The purpose of the fee provision is to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide Bldg. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977). A "grudging application" of this fee provision would be clearly contrary to congressional intent." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (citations and quotations omitted).

Congress requires agencies to respond to a FOIA request in 20 working *days*, not weeks, not months, or in this case, nearly three years later. *See* 5 U.S.C. § 552(a)(3)(A) (agencies "shall make the records *promptly* available to any person.") (emphasis added). Non-exempt records are to be made "promptly available." *Jud. Watch, Inc.*, 895 F.3d at 780; *see also*, *Am. Civil Liberties Union Immigr. Rights Project v. U.S. Immigr. and Customs Enforcement*, 58 F.4th 643, 651 (2d Cir. 2023); *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) (Because "[i]nformation is

often useful only if it is timely . . . [E]xcessive delay by the agency in its response is often tantamount to denial."). Because this Court entered an order changing the legal relationship between the parties and because the instant matter was the catalyst for the agency to begin producing records, this Court should award Plaintiff attorney fees under FOIA.

## I.    Plaintiff has substantially prevailed in this litigation.

Plaintiffs substantially prevail when they secure a judicial order, an enforceable written agreement, or a consent decree. *Hall & Assocs. v. U.S. Env't Prot. Agency*, 2023 WL 7928765, *7 (D.D.C. Nov. 16, 2023). Court orders—even scheduling orders—that change the legal relationship between the parties may also help determine that the plaintiff substantially prevailed in a FOIA matter. *Id.*; *Elec. Privacy Info. Ctr. (EPIC) v. U.S. Dep't of Homeland Sec.*, 218 F.Supp.3d 27, 39 (D.D.C., 2016). The FOIA statute also provides for fee eligibility where a complainant has substantially prevailed if the complainant has obtained relief through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II). This includes a showing that the lawsuit "caused the agency to release the documents obtained during the pendency of the litigation." *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F.Supp.3d 396, 404 (D.C. Cir. 2015) (cleaned up, internal citations omitted).

Plaintiff has substantially prevailed under both subsections of the statute. After a conference with the Court on August 21, 2020, this Court ordered Defense

counsel to confer with Defendant agencies "to obtain additional information on the search conducted in response to Plaintiff's FOIA request . . . Defense Counsel shall also file a Notice providing a better estimate for the timeline for redacting the videos responsive to Plaintiff's request as 2-8 months is not a reasonable timeline." *See* August 21, 2020 Minute Order. On September 18, 2020, Defendant filed a notice advising the Court regarding the timeline for the release of records. *See* ECF No. 17. On November 12, 2020, Defendant made a supplemental release of records to Plaintiff. *See* ECF No. 19. This alone is sufficient to convey prevailing party status to Plaintiff. *See EPIC*, 217 F.Supp.3d at 39 ("An order that requires an agency to produce documents by a date certain changes the legal relationship between the parties . . . after the order, the agency must do so or be subject to the sanction of contempt.") (citing *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 368 (D.C. Cir. 2008).

Plaintiff has also substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii), as this litigation was the catalyst to prompt Defendant's compliance with the statute. In its answer, Defendant admitted that at the time of the filing of the complaint in 2020, it had not issued a final response to Plaintiff's 2017 FOIA request or a response to Plaintiff's request for expedited processing. *See* ECF No. 5 at ¶¶ 10, 77. CBP's subsequent search in response to this litigation yielded over 14,000 pages of potentially responsive records, 3 audio files, and 8 video files. Of these, Defendant determined that 430 pages and all audio and video files were responsive to Plaintiff's FOIA request. *See* ECF No. 32 (Memorandum Opinion Denying Summary Judgment) at 2.

The instant litigation clearly drove CBP to finally comply with its obligations under FOIA nearly three years after Plaintiff submitted her request, the suit prompted the agency to change its position, and therefore Plaintiff has substantially prevailed. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011); *Dasilva v. U.S. Citizenship & Immigration Servs.,* No. 13–13, 2014 WL 775606, at *3 (E.D. La. Feb. 24, 2014) ("[P]laintiff is eligible to receive attorney's fees because this set [of records] was disclosed after approximately five months and, more importantly, after defendant submitted a declaration, sworn under penalty of perjury, to the effect that all documents had already been disclosed and defendant then reconsidered its position after plaintiff moved for summary judgment.").

## II.    Plaintiff is entitled to attorney fees.

After considering fee eligibility, courts determine whether the plaintiff is entitled to attorney fees. In doing so, courts in this Circuit typically weigh four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the records. *Hall & Assocs. v. U.S. Env't Prot. Agency*, 2023 WL 7928765, at *9 (quoting *Davy v. CIA*, 550 F.3d at 1160). Notably, this test does not exist in the plain text of the statute, and as former D.C. Circuit Judge Kavanaugh bluntly remarked, it is time to "ditch the four-factor standard." *See Morley v. CIA,* 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J. concurring). Relying in part on Judge Randolph's dissent in *Davy,* then-Judge

6

Kavanaugh noted that "the four factors have no basis in the statutory text" and, indeed, "Congress's decision not to include the four factors in the statutory text appears to have been deliberate." *Id.* Moreover, Judge Kavanaugh described the first three factors as "incompatib[le] with the FOIA's structure and purposes" and "so vague and malleable that they provide very little guidance to district courts." *Id.* at 691–92.

Plaintiff asks this Court to adhere to the plain text of the statute and submit that, as discussed *supra*, because Plaintiff has demonstrated they substantially prevailed in this litigation, she has necessarily demonstrated that she warrants attorneys' fees under the statute. As Judge Kavanaugh's concurring opinion discusses in *Morley*, Plaintiff urges the Court to adopt the rule from *Newman v. Piggie Park Enterprises*, "where the Supreme Court construed a similarly worded civil rights fees statute and held that prevailing plaintiffs should receive attorney's fees — with only a very narrow exception for 'special circumstances' such as bad faith by a prevailing plaintiff." *See* 390 U.S. 400, 402 (1968).[1] Nevertheless, even under the four-factor test, Plaintiff has prevailed on all four factors.

### A. Factor One: Public Benefit

Regarding the public benefit, this factor "requires consideration of both the effect of the litigation . . . and the potential public value of the information sought." *Am. Immigr. Council*, 82 F.Supp.3d at 406. In evaluating this factor, courts conduct

---

[1] Plaintiff posits this argument in good faith to preserve this issue for appeal in the event that one becomes necessary in the instant case.

"an *ex ante* assessment of the potential public value of the information requested, with little to no regard to whether any documents supplied prove to advance the public interest." *Morley v. CIA (Morley II)*, 810 F.3d 841, 844 (D.C. Cir. 2016). Where it is "plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Id.*

In the instant case, Plaintiff sought records of public importance, specifically the manner in which CBP treats U.S. Citizens who enter the country through a port of entry, trying to aid noncitizens seeking asylum in the U.S. *See* ECF No. 1 ¶¶ 16-18. During her attempt to assist an asylum-seeking Syrian refugee family, CBP officials unlawfully detained her for a number of hours. After her release, she filed written complaints with CBP and DHS regarding the abuses she experienced at the border. Plaintiff also sought records regarding any video, CBP's investigation, and other related records regarding the incident. *See* ECF No. 1 ¶¶ 1-9.

There is a clear potential public benefit from the records Ms. Sabra sought. As discussed in Mr. Free's declaration, Plaintiff "used the records we obtained from CBP—including internal communications, investigations, witness statements, and video—to help her organization and the individuals they serve better understand the process of presenting claims for fear-based protection from relief at US Ports of Entry. . . ." *See* Free Decl. ¶ 10. The public knowledge is enhanced through a better understanding of how U.S. Citizens rendering legal assistance to asylum seekers at the border may be treated by CBP and the risks they undertake in doing so. *See id.* (The materials from the litigation "have also been shared with journalists, legal

services organizations, and policymakers for the purposes of education and informing on the subject of CBP secondary inspection and detention of US legal workers" with US citizenship.).

The public knowledge is also enhanced by understanding that there may be video, audio, and other caches of records related to a U.S. Citizen's encounter with and/or detention by CBP at the border. *See id.* at ¶ 11. This extends to the records regarding CBP's subsequent investigation of the incident, the records that requestors can potentially obtain detailing how the agency handled (or mishandled) a complaint, how the agency generates incident reports, and the agency's subsequent decisions regarding the investigation. As the Supreme Court has repeatedly observed, FOIA was enacted to help "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[I]n FOIA, after all, a new conception of Government conduct was enacted into law, a general philosophy of full agency disclosure." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 16 (2001). Obtaining records through FOIA that shed light on an agency's potential abuses, violations of constitutional rights, and what the agency does or does not do after complaints are filed against the agency, all provide a means "to check against corruption and to hold the governors accountable to the governed." *NLRB*, 437 U.S. at 242.

Given that, at least at the time of the Complaint, CBP takes little if any action on complaints against border patrol agents, the records Plaintiff sought

clearly stand to enhance the public interest in CBP's border detention practices, its process of investigation of potential abuses, as well as the evidence it accumulates. In addition, given CBP's abysmal track record of taking action to hold its agents accountable, these records help shed light on how the agency handles purported violations of US citizens' rights. *See* ECF No. 1 ¶ 73 n.2.  The first factor favors Ms. Sabra.

## B. Second and Third Factors: Plaintiff's interest in the Records

The second and third factors (often combined in the analysis) also clearly favor Plaintiff. *See Am. Immigr. Council*, 82 F.Supp.3d at 405. These factors look to any commercial benefit to the plaintiff and the nature of a plaintiff's interest in pursuing the records. *See id.* Here, Plaintiff sought the records regarding her treatment in CBP detention in order to hold the agency accountable for any and all violations of her constitutional rights. Plaintiff has no commercial interest sought or gained in making her FOIA request. Her personal interest in the records does not preclude an award of fees, as her attempt to vindicate her constitutional rights "fits well within the scope of the second criteria for awarding attorneys' fees." *Williams v. F.B.I.*, 17 F.Supp. 2d 6, 9 (D.D.C. 1997). These two factors thus favor Plaintiff.

## C. Fourth Factor: Reasonableness of the agency's withholding.

The final entitlement factor concerns "whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Davy, 550 F.3d at 1162 (internal citations and quotation marks omitted).

A requester need not "affirmatively show[] that the agency was unreasonable" for this factor to weigh in her favor, but rather that the burden is on the agency to show that it acted reasonably. Id. at 1163; see also *Elec. Privacy Info. Ctr. v. DHS*, 892 F. Supp. 2d 28, 52 n.15 (D.D.C. 2012) ("[A]n agency must show that its withholding of requested records had a reasonable basis in the law, not merely that it did not withhold in bad faith.").

This factor indisputably favors Ms. Sabra. Her May 7, 2017, FOIA request to CBP went unanswered for 33 months before the initiation of the current litigation. CBP did not begin searching for records until March of 2020, and only after Ms. Sabra brought the instant lawsuit. Notably, in response to a prior similar FOIA request in 2016, CBP only provided a two-page Form I-213 in response. *See* ECF No. 1 ¶¶ 5-7. Additionally, as Mr. Free's declaration notes, "The refusal of Defendant's first counsel to meet and confer regarding the issues in this case needlessly prolonged its resolution and necessitated a significant amount of legal work . . . that is generally unnecessary in FOIA cases" he had previously litigated. *See* Free Decl. ¶ 9. This factor also favors Plaintiff.

### III.    Plaintiff's fee request is reasonable.

A reasonable attorney fee award is determined by calculating the "lodestar" amount, which is the number of hours reasonably worked multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, Plaintiff's counsel set forth 40.85 hours litigating the instant matter through summary judgment. *See* Ex. A; Ex. B. To calculate fees for public-interest attorneys

11

who have no customary hourly rates, "Courts often look to prevailing market rates in the community." *See Am. Immigr. Council*, 82 F.Supp.3d at 405. Plaintiff's counsel used the *Fitzpatrick* matrix accepted and published by the Department of Justice (DOJ) to calculate the hourly rate for attorneys' fees in FOIA matters. *See* D.D.C. DOJ, *The Fitzpatrick Matrix* at 1-2 (last accessed April 9, 2025) (available at https://www.justice.gov/usao-dc/media/1395096/dl?inline). Here, Mr. Free was in his 9th year of practice in 2020 and 14th year of practice in 2025. The total amount requested for Mr. Free's legal work on the case is $22,778.92. Mr. Free also incurred the costs of $400 for the filing fee; $554 for printing opening case documents and mailing service of process via USPS; and $18.42 for certified mail/return receipt expenses totaling $972.42. His total fees and costs are $23,750.42.

Plaintiff's undersigned counsel also seeks to recover fees on fees for time spent litigating the instant motion. It is settled in this circuit that hours reasonably devoted to a request for fees are compensable," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp.2d at 239. Undersigned counsel was in his 10th year of practice when he joined the instant matter and his 11th year of practice as of the filing of the instant motion. Undersigned counsel has spent a total of 10.1 additional hours litigating this motion and requests additional attorney fees in the amount of 7300.20. *See* Ex. B. Here, the requested "fees on fees" are a modest proportion of the time spent litigating this matter. Moreover, work on this motion was needed because, in response to an offer to settle attorneys' fees, CBP remained silent. *See* Ex. B ¶ 12.

## IV.    The rates sought are reasonable.

The customary method for awarding fees in FOIA litigation is the "lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a reasonable hourly rate. [cite DC]. As noted in the DOJ's publication of the *Fitzpatrick* Matrix in the District of Columbia, "For matters in which a prevailing party agrees to payment pursuant to the [*Fitzpatrick*] matrix, the United States Attorneys' Office will not request that a prevailing party offer the additional evidence that the law otherwise requires." *See* U.S. Attorney's Office for the District of Columbia, The *Fitzpatrick Matrix*, at 2 ¶ 3 (internal citations omitted).

## <u>CONCLUSION</u>

For the reasons stated above, the Court should award Plaintiff $30,079.12 in combined attorneys' fees and $972.42 in costs, in addition to reasonable attorneys' fees for future work performed in connection with this motion.

Dated: February 2nd, 2026                    Respectfully submitted,


By: <u>/s/ Daniel Melo</u>

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Bono Counsel For Plaintiff*